In re J. Lynn JONES and Rebecca Jean Jones, individually and dba Union Exploration, dba Lynn Jones Insurance and dba Lynn Jones Real Estate, Debtors.

**In re UNITAS, INC., a Texas Corporation, Debtor.**

Bankruptcy Nos. 583–00059—583–00060.

United States Bankruptcy Court,
N.D. Texas,
Lubbock Division.

Jan. 16, 1984.

David N. Reed, Dallas, Tex., for debtors.

Randall L. Rouse, Odessa, Tex., for InterFirst Bank Odessa.

Josiah M. Daniel, III, Amarillo, Tex., for Tascosa Nat. Bank.

Gary B. Clark, Dallas, Tex., for official unsecured creditors' committee.

## MEMORANDUM AND ORDER

BILL H. BRISTER, Bankruptcy Judge.

The Official Unsecured Creditors Committee and Tascosa National Bank, a creditor, each challenged an "agreed order" for use of cash collateral and adequate protection which had been entered by this Court on September 7, 1983. Under that order the debtors had effectively recognized the security interest of InterFirst Bank Odessa, N.A. ("Bank") in properties owned by one or the other debtors. The challengers advanced several bases for their respective conclusions that the bank had received a preferential transfer as denounced by § 547 and that it was the recipient of a fraudulent transfer under § 548. The bank, in turn, filed motion for modification of stay to permit it to foreclose its claimed lien. The following summary constitutes findings of fact and conclusions of law after nonjury trial.

At all times relevant to this case J. Lynn Jones had engaged in the insurance business and in the real estate business in and around Lamesa, Texas, and also had engaged in the oil and gas business in several counties, including Stonewall, Callahan and Stephens Counties, Texas. Commencing in late 1977 or early 1978 he conducted the production and operation phases of his oil and gas business under the common name and style of "Union Exploration" and confirmed the use of that name by filing assumed name certificates in each of the counties in which he so conducted business. In "late 1976 or early 1977" he caused to be incorporated Unitas, Inc., a Texas corporation with all of its issued shares of stock being owned by J. Lynn Jones. The testimony does not detail the purpose of Unitas, Inc. except for the testimony of J. Lynn Jones that it's business was "mostly lease acquisition and ... holding ... overrides."

Jones' mineral operations did not avoid the malaise which infected the oil and gas industry in Texas in recent years. Prior to 1982 Jones had financed his divers business operations through loans from Seminole State Bank in Seminole, Texas and Tascosa National Bank in Amarillo, Texas. His new borrowing needs were such that neither of those banks could finance him further and he was referred to InterFirst

Bank Odessa (formerly First National Bank of Odessa).

On February 26, 1982, Jones obtained a loan from InterFirst Bank Odessa in the principal sum of $550,000.00, due six months later on August 31, 1982. The note evidencing the loan was executed by J. Lynn Jones, individually, and by J. Lynn Jones, individually, and by J. Lynn Jones, d/b/a Union Exploration. The note was secured by a deed of trust and by security agreement and financing statement against four wells [1] in Stonewall County, Texas, called the Drusedow No. 1, Drusedow No. A–2, Vahlenkamp No. 32–1 and Vahlenkamp No. 32–A–2. The loan proceeds were deposited in the "J. Lynn Jones, d/b/a Union Exploration" operations account at Tascosa National Bank. Neither the validity of those liens nor the amount of the debt are challenged by the creditors' committee and by Tascosa National Bank. However, that was the last transaction between those parties which is unchallenged.

Debtors' drilling program and other operational obligations soon devoured the $550,000.00 loan and Jones again contacted the bank for additional monies. The bank concluded that $400,000.00 additional monies could be loaned. Curiously, however, the loan was not made to Jones or to Unitas, Inc., but the note dated June 8, 1982, evidencing the $400,000.00 loan due August 31, 1982, was executed by Union Exploration, Inc., with J. Lynn Jones signing as president.

Union Exploration, Inc. had been incorporated by Jones on January 8, 1981. The purpose of its incorporation is obscure, because Jones testified that it was never his intention to transfer the proprietorship assets held by him under the common name and style of "Union Exploration" to that new corporation, Union Exploration, Inc.

There are only two clues in the record for its incorporation.

Jones testified that he feared that some third party would adopt the name "Union Exploration" which could cause him considerable difficulty. Therefore, he indicated that he formed the corporation merely to preserve the name "Union Exploration." There is no evidence in the record reflecting whether there was compliance with VATS art. 1302–2.02 which requires that one who becomes incorporated without a change of firm name must give notice of intention to incorporate by publishing such notice in a newspaper in the county where the principal business office of the corporation is located. With the exception of the statutory $1,000.00 which Jones as incorporator paid to Union Exploration, Inc., and the bank account through which the borrowed funds and oil runs passed, it was completely devoid of assets at all times relevant to this memorandum.

The second clue to a possible reason for the loan being made to Union Exploration, Inc., instead of to J. Lynn Jones or Unitas, Inc., was provided by Jones in his testimony that as a result of a conversation with the lending officer at the bank he concluded that "in order for the business to be kept at the bank in Odessa ... a corporate title could be put on the note instead of the loan in that one bank." That statement by Jones was not challenged nor developed further and determination cannot be made as to whether the loan was required by the bank to be made to that corporation.

Notwithstanding the fact that Union Exploration, Inc. owned no assets J. Lynn Jones, as its president, attempted to secure the $400,000.00 note to the bank with its deed of trust against three wells in Stonewall County, Texas, the Davis No. 1 [2], the Drusedow No. B–3 and the Drusedow No. C–4 ... wells which in fact were "owned"

---

1. The Drusedow lease had been assigned by Unitas, Inc. to "Union Exploration" on July 17, 1981, and the Vahlenkamp lease had been assigned by Unitas, Inc. to "J. Lynn Jones, d/b/a Union Exploration" on July 15, 1981. Each assignment reserved a 20% overriding royalty interest to Unitas, Inc.

2. The Davis lease had been assigned by Unitas, Inc. to "Union Exploration" on February 12, 1982, reserving a 20% overriding royalty interest to Unitas, Inc.

by J. Lynn Jones, d/b/a/ Union Exploration with overriding royalty interests owned by Unitas, Inc. Also J. Lynn Jones, individually, and Unitas, Inc. each furnished InterFirst Bank Odessa with their respective guaranties of the Union Exploration, Inc. note. Further Unitas, Inc. guaranteed the loans to J. Lynn Jones, d/b/a Union Exploration. In addition to its guaranty Unitas, Inc., further secured the June 8, 1982, note of Union Exploration, Inc. with deed of trust, security agreement and financing statement covering its overriding royalty interests in five wells in Stonewall County, Texas ... the Drusedow No. 1, Drusedow No. A–2, Drusedow No. B–3, Drusedow No. C–4, and Davis No. 1. Neither J. Lynn Jones, individually nor J. Lynn Jones, d/b/a Union Exploration executed a deed of trust for the benefit of the bank in connection with the June 8, 1982, notes.

Some of the challenges advanced by the creditors' committee and by Tascosa National Bank had their embryonic beginnings in those transactions of June 8, 1982. Union Exploration, Inc., the maker of the note, is not in bankruptcy. The challengers contend that not only was the deed of trust executed by Union Exploration, Inc. ineffective to impress a lien against property not owned by it, but that the guaranties of the individual debtor, J. Lynn Jones, and of Unitas, Inc., and the deed of trust, security agreement and financing statement executed by Unitas, Inc. on overriding royalty interests owned by it were totally without consideration and are void. Further they argue that the guaranties by the debtor, Unitas, Inc., of the debts of J. Lynn Jones and of Union Exploration, Inc., and the guaranty by the debtor, J. Lynn Jones, of the debts of Union Exploration, Inc. were fraudulent transfers under § 548 of the Code.

The debtors and the bank further complicated the transactions in August 1982 when the unchallenged $550,000.00 note and the hotly challenged $400,000.00 note became due. Neither Union Exploration, Inc. nor the debtors could pay those notes and in fact the drilling program required more monies. On August 23, 1982, Union Exploration, Inc. executed a note in the principal sum of $300,000.00 to the bank, due December 31, 1982, and the note proceeds were deposited in the Union Exploration, Inc. account which the bank had set up to handle disbursements of loan funds. Also, by a note dated that same date of August 23, 1982, Union Exploration, Inc. renewed the $550,000.00 note and the $400,000.00 note and, combining them with the $300,000.00 note of that same date, executed a new note in the principal sum of $1,250,000.00 due December 31, 1982. Again, Union Exploration, Inc. secured the $1,250,000.00 note with deed of trust, security agreement, and financing statement against properties which had never been conveyed to the corporation—various working interests, as well as the Vahlenkamp 32–C3, undeveloped acreage in the Vahlenkamp, and undeveloped acreage in the Davis leases, all in Stonewall County, Texas. Further, Unitas, Inc. executed[3] a deed of trust, security agreement, and financing statement against a large number of working interests owned by it in Callahan and Stephens Counties, Texas. However, notwithstanding that the notes were renewed and the new monies were advanced on August 23, 1982, the deeds of trust and the article 9 documents were not executed by Union Exploration, Inc. and by Unitas, Inc. until November 22, 1982, and they were not recorded until December 6, 1982, in Stonewall County, Texas, December 9, 1982, in Callahan County, Texas, and December 10, 1982, in Stephens County, Texas. The challengers posit that the November 22, 1982, execution, and the early December recordation, of the security devices constitute preferential transfers of the debtors' properties under § 547, because Tascosa National Bank, pursuant to § 303 of the Code, filed involuntary petition against the debtors on February 18, 1983.

**3.** Those security documents apparently attempted to encumber all of the remaining mineral properties owned by Unitas, Inc.

On March 3, 1983, correction deeds of trust were executed by which the debtor-grantor indicated that in the earlier deeds of trust the name of the grantor was written mistakenly as "Union Exploration, Inc." when in truth and in fact the grantor's name in each of those deeds of trust should have been "J. Lynn Jones, d/b/a Union Exploration." The challengers contend that those "correction deeds of trust" were executed and recorded after the involuntary petition under § 303 had been filed and are void as in violation of the automatic stay.

## THE AVOIDING POWERS OF THE CHALLENGERS

A threshold matter is concerned with the standing of the Official Unsecured Creditors Committee and of Tascosa National Bank to advance the §§ 547 and 548 challenges and those to the "correction deeds of trust." J. Lynn Jones, as individual debtor and as principal of Unitas, Inc., the second debtor, stated on the record that at the time each of the security devices was executed he fully intended to provide the bank with a security interest in the properties. He has eschewed the possible right to make the §§ 547 and 548 challenges and to contend that the "correction deeds of trust" are invalid, notwithstanding the fact that as debtors-in-possession each of the debtors possesses the avoiding powers of a trustee. *See* § 1107(a).[4]

When a debtor-in-possession refuses to exercise avoiding powers, may any other party in interest properly use those rights? While § 1109(b) provides any party in interest with the right to appear and be heard on any issue in a reorganization case I am not prepared to state that as a matter of law a separate creditor, such as Tascosa National Bank, possesses those avoiding powers. *See Matter of Monsour Medical Center*, 5 B.R. 715, 718 (Bkrtcy.W.D.Pa.

1980) (§§ 547 and 548 ... limit a creditor's right to petition the court for standing to sue on behalf of the trustee ... and ... a creditor may not bring suit on his own behalf to avoid a preferential or fraudulent transfer). However, where, as here, the debtor-in-possession has failed to act some party in interest *should* have the right and the power to present the avoidance issues.

Some courts which have reached the issue have concluded that the creditors' committee has implied authority to sue to avoid a preference or a fraudulent transfer where the trustee or the debtor-in-possession unjustifiably fails to bring the suit or abuses its discretion in performing its duties. *See* e.g. *In re Evergreen Valley Resort, Inc.*, 27 B.R. 75 (Bkrtcy.D.Me. 1983); *Matter of Monsour Medical Center*, supra. Some cases appear to limit the implied right for the exercise of avoiding powers by the trustee to those instances where the committee had sought and obtained the court's authorization. *Evergreen*, supra. *In re Segarra*, 14 B.R. 870, 878 (Bkrtcy.P.R.1981) (absent specific authority conferred by the Court the creditors' committee has no authority to sue on behalf of the debtor nor on behalf of the debtor's estate). In *Dallas Cabana Inc. v. Hyatt Corporation*, 441 F.2d 865 (5th Cir.1971) the debtor corporation tried to prosecute an action for accounting when the trustee failed to file that action. The Court quoted from the decision of *Gochenour v. George and Francis Ball Foundation*, 35 F.Supp. 508 (S.D.Ind.1940):

"... If the creditors have information of a cause of action, it is their duty to bring it to the attention of the trustee or debtor-in-possession, and if he or it fails to institute proceedings thereunder, and they feel that proceedings should be instituted, they have the right to present the question to the court having jurisdiction over the assets of the bankrupt and ask leave to prosecute the action for and

---

**4.** § 1107(a) of Title 11, United States Code:

"Subject to any limitations on a trustee under this chapter, and to such limitations or conditions as the court prescribes, a debtor-in-possession shall have all the rights, other than the right to compensation under § 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in §§ 1106(a)(2), (3) and (4) of this title, of a trustee serving in a case under this chapter.

in the name of the trustee or debtor-in-possession, as the case may be. The mere fact that the debtor fails to institute such proceedings does not authorize them to proceed in their own names and upon their own behalf."

In this case the creditors' committee had not sought the approval of the court prior to raising the avoidance issues. Although seeking advance authorization from the court might have been the preferable action by the challengers, to dismiss the actions without reaching the avoiding issues would promote form over substance. It is not inconceivable that a hypothetical debtor, in order to maintain favorable financial arrangements, would collaborate with a hypothetical bank to recognize liens and encumbrances which otherwise might be avoidable. One of the purposes of Chapter 11 of Title 11 is to afford a meaningful opportunity to a worthy debtor to rehabilitate. That purpose might be served by permitting agreements between debtors and creditors with secured interests to proceed without independent analysis. However, that rehabilitative purpose is not boundless and the overall "fairness" concept of the bankruptcy laws mandates that the debtor's transactions should not pass without examination. Where, as here, there are aspects of the prepetition transactions between the debtors and the bank which fall beyond the pale of normalcy those transactions should be brought to the attention of the Court. Authorization for the filing of the challenges by the creditors' committee is given *nunc pro tunc*.

## THE JUNE 8, 1982, TRANSACTIONS

The challenges advanced to the June 8, 1982, transactions include contentions that the borrower, Union Exploration, Inc., owned none of the property which it attempted to encumber, that the "correction deeds of trust" are void, and that the security documents executed by Unitas, Inc. and the guaranties by Unitas, Inc. and by J. Lynn Jones, individually, constitute fraudulent conveyances which may be avoided under § 548.[5]

 The correction deeds of trust, executed by the debtors and filed by the bank after the bankruptcy petitions were filed, will not be considered by me in resolution of the § 548 challenge. In the first place the March 3, 1983, post-petition correction deeds of trust, obtained by the bank with the benefit of 20/20 hindsight vision, has little, if any persuasive effect. Further, the post-petition filings of the deeds of trust violate the automatic stay provided by §§ 362(a)(4) and (5) which prohibit any act to create, perfect, or enforce any lien against property of the estate or property of the debtor. The validity of those liens depend entirely on the validity of the original transactions on June 8, 1982 and those in December, 1982, respectively. Finally, a correction deed relates back to, and becomes effective as of the date of the first deed. *Polk v. Carey*, 247 S.W. 568 (Tex.Civ.App.—Beaumont 1922, writ dism'd.); *Borden v. Hall*, 255 S.W.2d 920 (Tex.Civ.App.—Beaumont 1952, no writ). However, the correction deed relates back to the original deed only in the absence of someone claiming as an innocent purchaser. *Sands v. City of Dallas*, 398 S.W.2d 428 (Tex.Civ.

5. Although Tascosa National Bank appeared to raise the issue in its pleading no persuasive proof was adduced which could establish that the corporate shield of Union Exploration, Inc. should be avoided and the transactions be considered to be those of J. Lynn Jones individually. Under Texas law before the corporate shield may be disregarded proof is required of one or more of the following factors: (1) that the individual sought to be charged with personal liability for the acts of the corporation used the corporate entity to perpetrate a fraud, to avoid the effect of a statute, to evade an existing obligation, or to justify a wrong; (2) that the individual who controls the corporation and manages its business affairs does so in a manner whereby individual or corporate creditors may be deprived of their legal rights by a shuffling of the legal personalities of the corporation and its controller to the extent that the corporation is, in fact, the alter ego of the controller; (3) the corporate formalities were not adhered to by the corporation; or (4) the corporation was inadequately capitalized. *See William B. Roberts, Inc. v. McDrilling Company*, 579 S.W.2d 335, 345 (Tex.Civ.App.—Corpus Christi 1979, no writ).

App.—Tyler 1965, writ dism'd.); *Polk v. Carey,* supra. Pursuant to § 544(a)(3) the trustee has the rights and powers of a bona fide purchaser of real property from the debtor as of the commencement of the case. The debtors-in-possession, by virtue of § 1107(a), have the same rights and powers of the trustee. On February 18, 1983, when the involuntary petition was filed, the debtors were those "innocent purchasers" contemplated by § 544(a)(3). As I have indicated above, when debtors-in-possession refuse to exercise those powers of bona fide purchasers the Official Unsecured Creditors' Committee may exercise those powers. Thus any correction deed recorded after the date upon which the bankruptcy petition was filed on February 18, 1983, will not relate back to the original date of June 8, 1982, because of the presence of "innocent purchasers." For each of those reasons, singly and collectively, the post-petition filings of the "correction deeds of trust" were ineffective and the § 548 issues will be resolved on the merits of the June 8, 1982, transactions.

■ No challenger has contended that the June 8, 1982, transfers were made to specifically hinder or delay any creditor. Therefore, the creditors' committee can meet its burden to establish that those transfers were fraudulent and avoidable only if it proves both elements of § 548(a)(2)(A) and (B).... that is, that the trustee (or, in this case, the creditors' committee) may avoid any transfer of an interest of the debtor in property, or any obligation incurred on or within one year before the date of the filing of the petition, if the debtor (1) received less than a reasonably equivalent value in exchange for such transfer or obligation and (2) the debtor was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation, was left with unreasonably small capital, or intended to incur debts beyond debtor's ability to pay. The challengers have failed to meet either of those burdens.

Notwithstanding the fact that the challenged note was executed by Union Exploration, Inc., and the proceeds of the loan were deposited in a bank account of that corporation, it is unchallenged that those proceeds were in fact used by Jones in his drilling program. The individual debtor, J. Lynn Jones, received direct value from the June 8, 1982, loan and it is evident that he received reasonably equivalent value in exchange for his guaranty. No one has contended that the other debtor-guarantor, Unitas, Inc., was the alter ego of J. Lynn Jones or the conduit through which he conducted his individual business. In that event, therefore, the separate existence of Unitas, Inc. must be recognized for the purposes of this memorandum. There was no proof that it received direct benefit from the June 8, 1982, transactions. However, at all times relevant to this memorandum Unitas, Inc. was receiving monthly income as a result of the J. Lynn Jones drilling program. In determining the "reasonably equivalent value" issue the Court may look to any indirect benefits that the debtor received from the transfer. *Rubin v. Manufacturers Hanover Trust Company,* 661 F.2d 979 (2nd Cir.1981). Under the circumstances of this case I find that Unitas, Inc. did receive substantially equivalent value for its guaranties and for its security devices of June 8, 1982.

The challengers failed also to establish that either debtor was insolvent on June 8, 1982. The parties have stipulated that the outstanding indebtedness to the bank on June 8, 1982, was $949,121.08. The value of the bank's collateral from J. Lynn Jones, d/b/a Union Exploration on that date was $1,191,945.00. On that date the value of all assets owned by Unitas, Inc. was $483,160.00. The value of the collateral provided by Unitas, Inc. to the bank on June 8, 1982, was $235,000.93. The challengers contend that Unitas, Inc., by executing a guaranty of the $949,121.08 indebtedness, had effectively become insolvent because the total value of all of its assets on that date was only $483,160.00. The terms of the guaranty appear, in fact, to permit the bank to proceed against either guarantor

without first pursuing the primary obligor. However, on June 8, 1982, when the transactions occurred, the bank was oversecured and there was no reasonable probability that either obligor would be required to perform under its respective guaranty. Assume, for the purposes of this memorandum, that the bank did in fact decide to proceed against either of the guarantors without first liquidating its collateral. In that event the guarantors had the corresponding rights of subrogation, reimbursement and contribution. I cannot conclude that either J. Lynn Jones, individually, or Unitas, Inc. were insolvent on June 8, 1982, that either of them became insolvent as a result of the transfers and obligations of June 8, 1982, or that any of the remaining alternatives of § 548(a)(2)(B) have application.

The problem still exists, however, with the attempted encumbrance by Union Exploration, Inc. of properties which it has never owned. Notwithstanding that I have mentioned above that I cannot consider the "correction deeds of trust" in my resolution of the issues, I must find from the evidence adduced that the parties to the June 8, 1982, transactions did intend for the properties described on the Union Exploration, Inc., deed of trust to secure the June 8, 1982 note. Where, as here, the owner of those properties actually received all benefits of the loan and the parties intended to secure the note with the subject properties, equity mandates that those intentions be effected.

■ An equitable lien is created when a party indicates his intention to make certain property the security for a debt, and the party promises to convey or assign the property as security. *William Clay, Jr. Foundation v. United States,* 233 F.Supp. 628 (N.D.Tex.—Ft. Worth 1964). The fundamental element necessary to creation of an equitable lien is the existence of an express or implied contract, because an equitable lien does not arise except out of contract between the parties. *Bray v. Curtis,* 544 S.W.2d 816 (Tex.Civ.App.—Corpus Christi 1976, writ ref. n.r.e.). However, where the surrounding circumstances indicate that the parties to a transaction intended that certain property would secure the payment of a debt Texas, following the general rule, recognizes an equitable lien in favor of a party. *Citizens Coop Gin v. U.S.,* 427 F.2d 692, 695 (5th Cir. 1970) (citing *Williams v. Greer,* 122 S.W.2d 247, 248 (Tex.Civ.App.—Dallas 1938, no writ), where the court noted:

"After a transaction resolves itself into a security, whatever may be its form and whatever name the parties may choose to give it, it is in equity a lien ... It is not necessary that a lien is created by express contract or by operation of the statute; courts of equity will apply the relations of the parties and the circumstances of their dealings in establishing a lien based on right and justice."

■ I conclude that the June 8, 1982, note of Union Exploration, Inc. to the bank is secured by the properties described on the deeds of trust executed by Union Exploration, Inc. and by Unitas, Inc. and that the June 8, 1982 note is further secured by the respective guaranties of the debtors.

## THE AUGUST 23, 1982, TRANSACTIONS

■ As reflected earlier in this memorandum an additional sum of $300,000.00 was advanced to Union Exploration, Inc. on August 23, 1982, the existing $550,000.00 obligation and the existing $400,000.00 obligation were renewed, and all three obligations were combined in a new note of Union Exploration, Inc. to the bank on August 23, 1982, in the principal sum of $1,250,000.00, due December 31, 1982. Again, Union Exploration, Inc. executed security documents on properties which it did not own but which were, in fact, owned by J. Lynn Jones, d/b/a Union Exploration. Further, Unitas, Inc. executed security devices, encumbering its remaining assets. The challengers contend that those transfers should be avoided as preferential pursuant to § 547 of the Code.

All five elements of § 547(b) must be established before a transfer of property

may be avoided as preferential. The challenger must establish that property of the debtor was transferred (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made and; (3) made while the debtor was insolvent; (4) on or within 90 days before the date of the filing of the petition; (5) that enables the creditor to receive more than it would receive if the case was liquidated under Chapter 7 and the transfer had not been made.

Here, as was the case with the June 8, 1982, transaction, the proceeds were in fact used by J. Lynn Jones in his drilling program. Also as indicated above the guaranties of Jones and of Unitas, Inc. were effective. The fact that InterFirst Bank Odessa is a creditor of the debtors is established.

Also, there is no challenge to the fact that the transfers occurred within 90 days before the date of the filing of the involuntary petition and that by virtue of the transfers the bank would receive more than it would receive if the transfers had not been made and the case was liquidated under Chapter 7. The issues to be resolved are concerned with the two remaining elements ... whether the transfers secured an antecedent debt and whether the debtors were insolvent.

A relevant exception to § 547(b) is found in § 547(c)(1), providing that the trustee may not avoid a transfer to the extent that the transfer was (1) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor and (2) in fact a substantially contemporaneous exchange. The facts adduced at trial reflect that while the new loan was made and the old loans were renewed and extended and combined with the new loan on August 23, 1982, the security documents were not executed by Union Exploration, Inc. and by Unitas, Inc. until November 22, 1982, and they were not recorded until December 6, December 9, and December 10, 1982. There is no contention by any party that the debtors and the bank

did not in fact *intend* for the transfers to be contemporaneous exchanges for new value. The issue, however, is whether the transfers were *in fact* substantially contemporaneous exchanges.

All deeds are required by Texas law to be recorded in the county where the real estate is situated. V.A.T.S. art. 6630. A deed of trust is not perfected against subsequent purchasers for valuable consideration without notice until the deed of trust is recorded. V.A.T.S. art. 6631. Section 547(e) provides that a "transfer of real property is perfected when a bona fide purchaser of such property from the debtor ... cannot acquire an interest that is superior to the interest of the transferee." That section provides further that a transfer is made (1) at the time the transfer takes effect between the transferor and the transferee if such transfer is perfected at, or within ten days after, such time; or (2) at the time such transfer is perfected, if such transfer is perfected after such ten days....

It is clear from the record that the deeds of trust were not recorded within ten days of the August 23, 1982, transactions. The bank contends that the delay was caused by the debtors' lack of efficiency in gathering the required information for preparation of the deeds of trust. However, it was not shown that the delay was a deliberate act to defeat any rights of the bank. Even after the deeds of trust and other security devices were executed on November 22, 1982, the bank further delayed recording them for more than ten days. Any delay by the debtors is no excuse for the delay in perfection of the deeds of trust. *Matter of Rettig*, 32 B.R. 523 (Bkrtcy.D.Del.1983). I find that the deeds of trust and other security documents which were executed on November 22, 1982, and recorded on December 6, 9 and 10, 1982, were made "for or on account of an antecedent debt."

However, before the transfers may be avoided as preferential the challengers still must prove that they were made while the debtors were insolvent. Section 547(f) provides that the debtor is presumed to have

been insolvent on and during 90 days immediately preceding the date of the filing of the petition. This presumption is governed by Fed.R.Evid., Rule 301, which states:

"... A presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast."

Because of the presumption it is not necessary for the creditors' committee to present evidence of the debtors' insolvency until the bank comes forward with evidence of solvency. *Matter of Kennesaw Mint, Inc.*, 32 B.R. 799 (Bkrtcy.N.D.Ga.1983); *In re Belize Airways Ltd.*, 18 B.R. 485 (Bkrtcy.S.D.Fla.1982). The parties have stipulated that on December 15, 1982, the amount outstanding on the loan from Inter-First Bank Odessa was $1,299,706.00. The total value of all assets of Unitas, Inc. on that date was $444,000.00, at least $235,000.00 of that value [6] being encumbered with the bank's liens. The parties further stipulated that, excluding the collateral covered by the deed of trust from Union Exploration, Inc. which was recorded in December 1982, the value of the bank's collateral from J. Lynn Jones, d/b/a Union Exploration and Union Exploration, Inc. on December 15, 1982, was $1,182,852.00. Thus, the bank appeared on that date to be oversecured in the sum of at least $327,146.00. The schedules filed by each debtor reflected that in May 1983 each of them was insolvent. The liabilities of J. Lynn Jones on that date were scheduled at $4,875,606.65 and other liabilities of Unitas, Inc. were scheduled at $115,389.44, excluding the $1,250,000.00 guaranty. Jones testified by deposition that the values of the assets of each debtor were higher in December 1982 than were those values in May 1983, but giving full credit to his testimony those values would not be significantly appreciated. No financial statements were

adduced which reflected the debtor's financial condition in December 1982 and the creditor bank did not otherwise adduce evidence which tended to rebut the presumption of insolvency in December 1982 when the deeds of trust were filed for record. It is clear from the schedules that each debtor had liabilities in May 1983 other than the debts to the bank. At least the Tascosa National Bank indebtedness was owed in December 1982 and there is nothing in the record which reflects that the other scheduled debts were not owed in December 1982. The insolvency in May 1983 of each debtor seriously chilled the rights to subrogation and contribution which were discussed in connection with the guaranties. The guaranties are properly included in the schedule of liabilities of each debtor. The rights of subrogation and contribution have little value to each debtor.

The creditors' committee has met its burden to establish that the security documents executed to purportedly secure the August 23, 1982, transactions constitute preferential transfers. I conclude, therefore, that those transfers should be avoided.

## THE MOTION TO LIFT STAY

The bank filed alternative motion for modification of stay in the event its liens are avoided under either § 547 or § 548. However debtors have indicated their intention to file disclosure statement and proposed plans at an early date. The value of the properties against which the bank has perfected its liens is not reasonably calculated to materially depreciate between this date and the date upon which hearing on confirmation of plans can be scheduled. The factor of nondepreciation in itself constitutes a form of adequate protection. I conclude, therefore, that the motion for modification of stay should be presently denied, without prejudice to the right of the bank to again urge its motion if the plans of reorganization to be filed by the debtors are not timely confirmed.

---

**6.** If the challenged deed of trust recorded in December, 1982, is considered *all* of the Unitas, Inc. assets were encumbered by the bank's notes.

It is, therefore, ORDERED by the Court that:

1. The challenges by the Official Unsecured Creditors' Committee to the security transactions on June 8, 1982, be, and they are hereby, overruled and denied;

2. The challenges by the Official Unsecured Creditors' Committee to the security transactions on August 23, 1982, be, and they are hereby, sustained and the deeds of trust and the article 9 documents executed by Unitas, Inc. and by Union Exploration, Inc. which purported to secure the August 23, 1982, transactions be, and they are hereby, avoided and set aside;

3. The order for use of cash collateral and adequate protection entered by this Court on September 7, 1983, be, and it is hereby, set aside; and

4. The motion for modification of stay filed by InterFirst Bank Odessa N.A. be, and it is hereby, presently denied without prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.