In the Matter of SHELBY MOTEL GROUP, INC., Debtor.

FIRST ALABAMA BANK, Appellant,

v.

SHELBY MOTEL GROUP, INC., Appellee.

No. CV–90–AR–1649–E.
Bankruptcy No. 88–10974.

United States District Court,
N.D. Alabama, S.D.

Oct. 18, 1990.

Robert H. Adams, Charles L. Denaburg, Najjar Denaburg Meyerson, Zarzaur Max Wright & Schwartz, P.C., Birmingham, Ala., Wanda D. Devereaux, Montgomery, Ala., for First Alabama Bank.

Harry P. Long, Long & Norton, Cleophus Thomas, Jr., Reid & Thomas, Thomas J. Knight, Anniston, Ala., for Shelby Motel Group, Inc.

Robert Shields, Berkowitz Lefkovits Isom & Kushner, Birmingham, Ala., pro se.

## MEMORANDUM OPINION

ACKER, District Judge.

The court has for consideration the appeal of First Alabama Bank (First Alabama) from the denial by the bankruptcy court of First Alabama's motion for leave to prosecute certain claims on behalf of the bankruptcy estate of Shelby Motel Group, Inc. (Shelby Motel). The procedural facts are fairly simple.

Industrial Development Board of the Town of Vincent, Alabama, issued its First Mortgage Industrial Development Revenue Bonds (Shelby Motel Group, Inc., Series 1980) for two purposes: (1) to provide part of the permanent financing for the acquisition of certain real property located on U.S. Highway 280, south of Interstate 459, in Shelby County; and (2) for the construction and outfitting of a Comfort Inn Motel on the site. The revenue bonds were secured by a mortgage and trust indenture executed by Industrial Development Board to First Alabama, as trustee on behalf of the bond holders, creating a first lien on the entire project. Shelby Motel leased the project from Industrial Development Board.[1] Shelby Motel was operating the facility when it defaulted on the lease and thereafter sought reorganization under Chapter 11.

Shelby Motel is a corporation owned and operated by James L. Deupree, Jr., and his brother, Charles Deupree. According to the petition for reorganization, it has between one and fifteen creditors. There is no list of creditors in the record, and therefore, First Alabama may be the only creditor. Shelby Motel is currently operating the project as debtor-in-possession after having filed its petition for relief on January 4, 1988. On January 20, 1989, First Alabama filed a motion requesting the bankruptcy court to appoint a trustee. First Alabama averred that Shelby Motel was guilty of fraud, dishonesty, incompetence, and gross mismanagement. On March 31, 1989, an interim consent order was entered on First Alabama's said motion. On April 17, 1989, the bankruptcy court ordered that First Alabama's motion for appointment of a trustee be held pending further developments. This court is unsure as to exactly what was the effect of this interim consent order. No trustee has ever been appointed.

On April 19, 1989, the bankruptcy court did appoint Robert Shields, III, as examiner. Pursuant to this appointment, Shields conducted a careful examination of the debtor and filed his final report on July 17, 1989. Not only did Shields inspect the motel facility and its operation, but he looked into alleged payments and/or loans to insiders and to closely related entities. Among numerous questionable payments, he found checks issued to Ann Deupree. He highly recommended a continued investigation after finding a check for $5,000 made payable to the order of Deupree Food Systems, Inc., described as a "loan," and a check for $10,500, characterized as a "loan" to the CSM Group, Inc. Both corporations happen to have been incorporated by the Deupree brothers. James L. Deu-

---

1. *See In re Shelby Motel Group*, 914 F.2d 227   (11th Cir.1990).

pree, Jr. was issued a check for "H.E. Expense", with no explanation. The debtor paid Deupree Furniture, an entity owned by the Deuprees' parents, for furniture ostensibly installed in the motel's health club. The examiner also found payments to Frank Teal and Cleo Thomas. With respect to the latter payment, which was for legal services, the examiner recommended more investigation to discover if the services were performed for Shelby Motel or for other corporations or for individual owners of the debtor. Examination also revealed payments to other professionals such as Eugene Presley, a real estate appraiser, whose work was pretty clearly in connection with a proposed Nashville motel project; Robert Dow, a post-petition appraiser, whose employment was approved by the bankruptcy court subject to that court's finding that Shelby Motel had a security interest in the property (the court ruled on June 9, 1989, that Shelby Motel only had a leasehold interest and that ruling was affirmed on appeal by Shelby Motel to the district court and to the Eleventh Circuit);[2] Brown, Anderson & Associates, an architectural firm, which was employed with regard to Shelby Motel and its proposed Nashville motel project; and Harry Winderman, an attorney who was paid for a never completed public offering for Shelby Motel. Assets of the debtor were also used to purchase Auburn football tickets for James L. Deupree, Jr., and to purchase a Jaguar automobile, allegedly for the purpose of creating an upscale image for the debtor. Comfort Inns are not noted for attracting affluent guests who drive Jaguars. Finally, the examiner found various miscellaneous payments made by the debtor, including monies paid to Joy Deupree and to the Tameron Auto Group, Inc. (for Jaguar repairs). The examiner appointed by the bankruptcy court concluded that the evidence showed:

> [S]ignificant payments and transfers [were made] to insiders, related entities and payments to various attorneys and other professional representing the Debtor which were, in many instances, in connection with other projects.... In addition, post-petition payments have been made to professionals that have not filed an application to be approved with the Court.... Assets of the Debtor were used to fund other projects of the owners of Debtor.... The Debtor-in-Possession has no incentive or motivation to investigate these transactions or attempt to collect....

Examiner's final report, page 16.

The examiner deduced from all of this evidence that, while it may not prove fraudulent behavior, "it certainly indicates the possibility of mismanagement or irregularity in the management of the affairs of the Debtor." (Examiner's final report, page 15). The examiner thereupon recommended that "a *Trustee be appointed* to (i) investigate transactions of the Debtor with insiders and related entities; (ii) *file appropriate actions to recover funds for the benefit of the estate of the Debtor and its creditors;* and (iii) to conduct the business of the Debtor." (Examiner's final report, page 16) (emphasis supplied).

Subsequently, on July 27, 1989, First Alabama filed a motion to reconsider its motion for the appointment of a trustee. On August 8, 1989, a hearing was held on the motion. Discussions about the examiner's final report took place, and testimony was offered about the motel's current practice of raising its rates, a practice which apparently had led to a loss of customers. The bankruptcy court said that it was "unable to find from the evidence that Mr. Deupree's present management of the motel is detrimental to the creditors or the estate" (Hearing transcript, page 99), and on August 11, 1989, denied First Alabama's motion.

On January 10, 1990, First Alabama filed a motion to allow it, as a creditor, to attack certain alleged preferential transfers and to bring actions to set aside alleged fraudulent conveyances, all for the benefit of the Shelby Motel bankruptcy estate. In support of this motion, First Alabama attached a copy of the examiner's final report. A hearing was held on the matter on April 10,

---

**2.** *See In re Shelby Motel Group,* 914 F.2d 227    (11th Cir.1990).

1990. At that hearing, after First Alabama attempted to convince the court that it had authority to grant such a motion, the court countered with:

> It seems to me those cases [the cases cited by First Alabama] rest on very questionable basis when the statute provides what should be done about that sort of situation ... I think that the courts have been justly criticized in many instances where judges have undertaken to exercise congressional power to determine policy matters.

Hearing transcript, page 17.

On June 25, 1990, the bankruptcy court denied First Alabama's motion. On July 2, 1990, First Alabama filed its notice of appeal to this court.

■■■ In a bankruptcy appeal, the district court cannot set aside the bankruptcy court's finding of fact unless the finding is "clearly erroneous." Bankruptcy Rule 8013. Thus, the bankruptcy court's findings must be affirmed if they are not clearly erroneous. *Matter of Garfinkle,* 672 F.2d 1340 (11th Cir.1982). However, a district court applies a *de novo* standard of review to the legal determinations of the bankruptcy court. *Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1307 (5th Cir.1985); *Matter of Hammons,* 614 F.2d 399, 403 (5th Cir.1980). The district court "must independently determine the correctness of the ultimate legal conclusion adopted by the bankruptcy judge on the basis of the facts found." *Hammons, supra.*

The issue in this appeal is whether or not the bankruptcy court was correct when it refused to consider, much less to permit, First Alabama to prosecute certain claims on behalf of the bankruptcy estate. This decision, together with the bankruptcy court's comment in the hearing transcript that the applicable bankruptcy statute does not provide an answer (April 10, 1990 transcript, page 17), are legal conclusions based on basically undisputed facts. Therefore, a *de novo* standard of review is appropriate.

■■■ First Alabama argues here, just as it argued unsuccessfully to the bankruptcy court, that 11 U.S.C. § 1109(b) gives it, as a creditor, the right to prosecute claims on behalf of the bankruptcy estate. Section 1109(b) states: "A *party in interest,* including the debtor, the trustee, a creditors' committee, an equity security holders' committee, *a creditor,* an *equity security holder,* or any *indenture trustee,* may raise and may appear and be heard on any issue in a case under this chapter." (emphasis supplied). While this section does not explicitly give an individual creditor the right to prosecute claims on behalf of the estate, cases interpreting the section have found that such a right is implied.

The Second Circuit in *In re STN Enterprises,* 779 F.2d 901 (2d Cir.1985), held that 11 U.S.C. §§ 1109(b) and 1103(c)(5) imply a qualified right for creditors' committees to initiate proceedings with the approval of the bankruptcy court. *Id.* at 904. Shelby Motel argues that this holding only gives this right to a creditors' *committee.* However, since this holding was based, at least in part, on a reading of § 1109(b) which would give individual creditors the right to be heard, this court finds Shelby Motel's narrow interpretation unconvincing. This court can see no logical reason to allow two cooperating small creditors as a committee-of-two to pursue the marshalling of estate assets which would otherwise be lost while denying that opportunity to the single largest and most interested creditor. This court has even heard of such a parliamentary animal as a committee-of-one, and on this record there is no proof of enough creditors to form a committee-of-two or more, if the creditors were so inclined.

In *Matter of Marin Motor Oil, Inc.,* 689 F.2d 445 (3d Cir.1982), the Third Circuit used § 1109(b) to confer the right to be heard upon a creditors' committee. The court gave § 1109(b) a broad reading and refuted the argument that such a reading would prompt intervention by multitudes of individual creditors. First, it commented that few individuals would have enough interest to intervene. *Id.* at 453. If they did, they would, in effect, be forming a *de facto* creditors' committee. Second, it found that the Bankruptcy Rules and Federal Rules of Civil Procedure give the bank-

ruptcy court the means to control any confusion caused by multitudinous intervention. *Id.* Finally, it decided that even if the means of control are deficient, those means are not so inadequate as to form a reasonable basis for denying the broad and absolute reading of § 1109(b) which comports with the legislative purpose. *Id.* A significant note by the Third Circuit is contained in its reference to § 1109(b)'s legislative history, which provides in unqualified terms for a right to be heard by any creditor. *Id.* at 451. Shelby Motel's off-repeated contention is that it would be absurd to give an individual creditor a right to prosecute claims. However, the *Marin* court's broad interpretation of § 1109(b), with which this court agrees, comes to an opposite conclusion. The mere fact that *Marin's* facts involved intervention by a creditors' *committee* is again not the controlling fact, given the Third Circuit's specific reference to intervention by a specific creditor under § 1109(b).

The Fifth Circuit in *Louisiana World Exposition v. Federal Ins. Co.*, 858 F.2d 233 (5th Cir.1988), found that a creditors' committee had standing under § 1103(c)(5) and/or § 1109(b) to file suit on behalf of a debtor-in-possession. *Id.* at 247. In *Matter of Joyanna Holitogs, Inc.*, 21 B.R. 323 (Bkrtcy.S.D.N.Y.1982), the bankruptcy court held that § 1109(b)'s right to be heard included a creditors' committee right to sue where a debtor-in-possession would not sue and where the committee was suing on behalf of the debtor. *Id.* at 326. The bankruptcy court in *In re Chemical Separations Corp.*, 32 B.R. 816 (Bkrtcy.E.D.Tenn.1983), relied on *Joyanna Holitogs* and permitted a creditors' committee under § 1109(b) to initiate an adversary proceeding against an insider when the debtor-in-possession declined to initiate the action. *Id.* at 819. In *In re Jones*, 37 B.R. 969 (Bkrtcy.N.D.Tex.1984), the bankruptcy court faced the question of "when a debtor-in-possession refuses to exercise ·avoiding powers, may *any other party in interest* properly use those rights?" *Id.* at 973 (emphasis supplied). The court there was not prepared to state as a matter of law that a single creditor possessed the avoid-

ing powers under § 1109(b), but it did find that where the debtor-in-possession fails to act, some party in interest should have that right. *Id.* While none of these cases is on all fours with this case, the court finds them applicable to the instant facts, where the debtor-in-possession refuses to sue and where the bankruptcy court will not appoint a trustee. Once again, this court points out that under § 1109(b), a creditors' committee has the same interest as does an individual creditor. Therefore, just because the prosecuting entity in some of the decided cases is a creditors' *committee* instead of an *individual creditor* does not mean that the concept applies solely to committees. First Alabama is certainly an interested creditor, whether or not it is the only one. It is ready and willing to institute an adversary proceeding or proceedings on behalf of the bankruptcy estate for the benefit of *all* creditors. It should be allowed to do what nobody else seems willing to do despite the official examiner's recommendation that it be done.

Other cases bolster the general proposition giving a single creditor standing under circumstances like these. The Sixth Circuit in *In re Automated Bus. Systems, Inc.*, 642 F.2d 200 (6th Cir.1981), held that if a trustee in bankruptcy defaults in performing a duty, such as attempting to set aside a fraudulent transfer, the bankruptcy court may, upon application, permit a *single creditor* to act in the trustee's name. *Id.* at 201. The bankruptcy court in *Matter of Monsour Medical Center*, 5 B.R. 715 (Bkrtcy.W.D.Pa.1980), held that the Bankruptcy Code provides three forms of relief for creditors when a debtor-in-possession breaches its statutory duty, one of which is to petition the bankruptcy court for leave to bring the action in the debtor's name and on behalf of all the creditors. *Id.* at 718. The same conclusion was reached in *Matter of Anderson*, 15 B.R. 341 (Bkrtcy.W.D.Mo.1981), where the court stated "[i]t is a general proposition of bankruptcy law that when a trustee fails to prosecute an action or an issue, *a creditor*, upon application, may be granted leave to prosecute the matter in his stead." *Id.* at 345 (emphasis

supplied). This court agrees with these propositions and finds them to be in accordance with the broad and absolute interpretation of § 1109(b), which adheres to its salutary purpose.

Shelby Motel, in arguing that no statutory authority exists for granting First Alabama's motion, heavily relies on a single quotation from *Collier on Bankruptcy*, which states: "[I]t is clear that individual creditors may not bring suits *on their own behalf* to avoid preferences *to other creditors ....*" 4 *Collier on Bankruptcy* § 547.21 at 547–93 (15th ed.1990) (emphasis supplied). This court need not quarrel with *Collier*'s said proposition, which does not apply to the instant facts. First Alabama brings its motion to prosecute certain claims *on behalf of the debtor's estate, not on its "own behalf".* Second, and more important, First Alabama is not simply seeking permission to avoid preferences made *"to other creditors "*. First Alabama is not here in competition with other legitimate creditors. Instead, it is seeking to recover from insiders, and from entities closely connected with the debtor, assets that ostensibly have been wasted by debtor's management. *Collier* was discussing *apples.* The bankruptcy court here was dealing with *oranges.*

Shelby Motel obtains little help from *Matter of Xonics Photochemical, Inc.*, 841 F.2d 198 (7th Cir.1988), which, along with *Collier*, it cites for the holding that the right to invoke the Bankruptcy Code provisions governing fraudulent conveyances belongs to the trustee or to the debtor-in-possession as a representative of all unsecured creditors and not to a particular unsecured creditor. *Id.* at 202. The particular unsecured creditor in *Xonics* was not harmed by the fraudulent conveyances as First Alabama has obviously been in the present case, if those transfers were, in fact, fraudulent. Second, there is no trustee here, and the debtor-in-possession obviously has no interest in proving its own chicanery. More importantly, First Alabama is seeking to prosecute claims on behalf of Shelby Motel, which makes it a form of a derivative suit in the name of the debtor, which the Seventh Circuit in *Xonics* deemed an

appropriate route. First Alabama asks only to prosecute on behalf of the estate when nobody else is willing to do so, a fact which would place it in the shoes of the reluctant debtor-in-possession and make it a fiduciary and a representative of all creditors. This is exactly what the *Xonics'* court approved. Finally, the fraudulent conveyances attacked in *Xonics* were pre-bankruptcy, whereas some of the transactions which First Alabama would seek to set aside took place after the filing of the Chapter 11 petition and after Shelby Motel was made debtor-in-possession. The fiduciary obligation of a debtor-in-possession creates a high degree of responsibility to creditors and cannot be allowed simply to become a license to steal or to waste estate assets.

In the present case, the implied right of a creditor to initiate an adversary proceeding in § 1109(b) should certainly permit First Alabama to be heard on its motion, if not guarantee its being granted. The bankruptcy court erroneously decided that it had no authority to grant the motion and therefore refused to consider it on its merits. Section 1109(b) was designed to give creditors and other parties-in-interest more participation in the Chapter 11 reorganization process. The instant case involves a debtor-in-possession that is a closely held family owned and managed business. For whatever reason, there is no creditors' committee. The debtor-in-possession has proven that it will never bring adversary proceedings against its own family members and their existing or non-existent business enterprises. Who could be better to prosecute such claims on behalf of the debtor under § 1109(b) than a badly harmed creditor? If not First Alabama, who?

This court finds that First Alabama deserves to be seriously heard under 11 U.S.C. § 1109(b). The pertinent statute, § 1109(b), has been interpreted broadly to include an implied right to bring adversary proceedings when the trustee and/or debtor-in-possession fails to do so. Therefore, the bankruptcy court's denial of First Alabama's motion to allow it to prosecute preferences and to bring fraudulent convey-

ance actions will be reversed and the action will be remanded to the bankruptcy court for First Alabama's motion to be judged upon whether the debtor-in-possession has a colorable claim or claims against insiders and/or other entities connected to the Deupree family, based on all the evidence, including the report of Shields, the examiner. If First Alabama's motion is not granted, the examiner's efforts and his report constitute a meaningless exercise. This opinion may breathe some life into the examiner's report and may help to justify the bankruptcy court's appointment of the examiner in the first place.

An appropriate, separate order will be entered.