**In re Susan CUMMINGS, Debtor.**

**Patricia Dzikowski, as Disbursing Agent; Dzikowski & Walsh; and Susan Cummings, Appellants,**

v.

**United States of America, through the Internal Revenue Service, Appellee.**

No. 07–80598–CIV–GOLD/TURNOFF.

United States District Court, S.D. Florida.

Nov. 28, 2007.

---

812

Edward Marod, West Palm Beach, FL,
for Susan Cummings.

John Walsh, Ft. Lauderdale, FL, for trustee, Patricia Dzikowski.

Frank Dale, Deborah Morris, United States Dept. of Justice, Tax Division, Washington, DC, for United States/IRS.

### ORDER REVERSING BANKRUPTCY COURT'S ORDER DENYING APPELLANT'S ORDER TO COMPEL THE INTERNAL REVENUE SERVICE TO RETURN ESCROWED FUNDS DISBURSEMENT; CLOSING APPEAL; AND RETAINING JURISDICTION ON ISSUES OF ATTORNEYS' FEES, COSTS, AND SANCTIONS

ALAN S. GOLD, District Judge.

THIS CAUSE comes before the Court upon the consolidated appeals of Disbursing Agent Patricia Dzikowski, Administrator Creditor Dzikowski & Walsh, and Debtor Susan Cummings seeking review of the Bankruptcy Court's Orders: (1) Denying Patricia Dziwoski's Motion to Compel the Internal Revenue Service ("IRS") to Return Escrowed Funds Disbursement (hereinafter, the "Motion to Compel"); and, (2) Denying Motion to Reconsider Order Denying Motion to Compel.

I held a hearing on the appeal on Friday, November 2, 2007. In addition, I have reviewed Appellants Patricia Dzikowski and Dzikowski & Walsh's joint initial brief and Appellant Susan Cummings' initial brief, the answer brief from Appellee IRS, and Appellants' reply briefs, along with the relevant case law, and I have made an independent review of the record. Upon review, I reverse the bankruptcy court's rulings that Appellant Patricia Dzikowski ("P. Dzikowski" or "Disbursing Agent") does not have standing to bring the Motion to Compel and that the doctrine of *res judicata* precludes the relief sought in the Motion to Compel. I further conclude that there is sufficient evidence in the record to establish, as a matter of law, that Appellants have standing to bring the Motion to Compel and the instant Appeal. Finally, I conclude that Appellants' Motion to Compel must be granted as a matter of law because, as discussed below, the "law of the case" doctrine, judicial estoppel and the proper application *of res judicata* preclude the IRS from arguing otherwise.

### I. Background

#### A. The Joint 1994 Tax Liability

Susan Cummings ("Cummings" or "Debtor") and her former spouse, Lawrence Cummings ("Mr. Cummings"), filed a joint federal income tax return for the 1994 tax year which reflected an unpaid tax obligation. The Debtor filed for divorce from Mr. Cummings in March 1995; the divorce was finalized in May of 1996. An escrow account (the "First Escrow Account") was established as part of the marital settlement agreement and funded with the proceeds from the sale of certain real estate properties. The proceeds generated from the sales were sufficient to satisfy the 1994 tax obligation in its entirety, including interests and penalties. (DE 3–5 at 50).[1] The right to the funds on the account were turned over to the IRS to be

---

1. Consistent with Appellants' Pleadings, items docketed in the main Bankruptcy Case, *Susan Cummings,* Case No. 98–36372–BKC–SHF will be referred to as "CP ____". Items docketed in the Adversary Case, *Susan Cummings v. United States of America through the Internal Revenue Service,* Case No. 02–3300–BKC–SHF–A will be referred to as "Adv. ____." References to Transcripts of hearings will include the hearing date. Items docketed in this appeal will be referred to as "DE ____". Finally, items docketed in the Appeal of the Pro–Rata Order, *Susan Cummings v. United States of America through the Internal Revenues Service and Tim Givens Building & Remodeling Inc.,* Case No. 03–CIV–81037–MGC, will be referred to as "Appeal ____."

applied as payment of the joint marital tax obligation.

Subsequent to the divorce, Mr. Cummings filed a Chapter 11 bankruptcy petition with the bankruptcy court. Mr. Cummings then sought authorization to invade the First Escrow Account and use the funds for a purpose other than satisfaction of the 1994 tax obligation. Over the objection of the Debtor, but with the agreement and consent of the IRS, Mr. Cummings was permitted to use One Hundred Thousand ($100,000.00) Dollars to satisfy a delinquent child support obligation.

On October 2, 1996, the IRS received Six Hundred Fourteen Thousand Three Hundred Eighty Nine and 57/100 ($614,389.57) Dollars from the First Escrow Account. As a result of the monies withdrawn by Mr. Cummings, the First Escrow Account no longer contained sufficient funds to satisfy the IRS's claim. Specifically, the $614,389.57 satisfied the entire 1994 tax liability, but not the penalties and interests which accrued during the pendency of the proceedings.

On November 13, 1996, the United States filed a Notice of Federal Tax Lien with respect to Ms. Cummings' alleged unpaid tax obligation for the 1994 tax year. The lien attached to all of Ms. Cummings' properties and interests in properties, including her homestead residence at 251 Jungle Road, in Palm Beach, Florida (the "Jungle Road Property").

B. Ms. Cummings' Chapter 11 Bankruptcy

On November 30, 1998, Ms. Cummings filed her own Chapter 11 bankruptcy petition. The bankruptcy court granted Ms. Cummings' request for leave to sell the Jungle Road property free and clear of liens, with liens to attach to the proceeds. The proceeds of the sale were used to fund an escrow account ("Escrow Account Two") to be held by Patricia Dzikowski as Disbursing Agent and be used to satisfy allowed claims under Ms. Cummings' Plan of Reorganization. The bankruptcy court approved Ms. Cummings' First Amended Chapter 11 Plan of Reorganization ("Confirmed Plan") by its Confirmation Order, dated May 16, 2001. (CP 229). The Confirmed Plan named Ms. Cummings as Debtor–in–Possession. (CP 204 § 1.25).

The Confirmed Plan defined allowed claim as follows:

> "Allowed" when used with respect to a claim (other than an administrative claim, a disputed claim or a claim which is not allowed) shall mean a claim or that portion of a claim: (i) which has been scheduled (other than claims set forth in the Debtor's schedules as contingent, unliquidated or disputed) or (ii) timely filed with the Court pursuant to Rule 1007(b) as to which no objection to the allowance thereof has been interposed within any applicable period or limitation fixed by the Code, Rule 3001 or a Final Order. Unless otherwise specified in the Plan, Allowed Claim shall not include interest on the amount of such claim from and after the petition claim.

(CP 204 § 1.2).

The IRS and Tim Givens Building & Remodeling, Inc. ("Tim Givens") each asserted claims against the Debtor secured by the Jungle Road property and the sales proceeds. The Confirmed Plan provided that the Escrow Account Two would be held and to the extent these claimants were found to have valid claims, these funds would be used first to satisfy the IRS claim in the amount allowed; then used to pay the allowed claim of Tim Givens; and to the extent there were funds remaining, the funds would be used to pay

allowed administrative expenses, including those of Appellant Dzikowski & Walsh.

The bankruptcy court determined that the amount of the allowed Tim Givens claim was Forty Two Thousand Six Hundred Sixteen and 37/100 ($42,616.37) Dollars. The IRS claimed that Debtor was indebted to the United States for an assessed, unpaid federal tax liability of One Hundred Ninety Thousand Thirty Six and 96/100 ($190,036.96) Dollars for the 1994 tax year. Ms. Cummings disputed the IRS claim on the basis that she had satisfied this claim through the monies deposited in the First Escrow Account.

As to the disputed IRS claim, § 5.1 of the Confirmed Plan provides that:

> The Internal Revenue Service's Secured Claim will become an Allowed Claim upon the entry of a Final Order on the Debtor's objections to claims or in any other action brought by the Debtor to determine the amount of the Secured Claim of the Internal Revenue Service.

(CP 204, § 5.1.1). The Confirmed Plan also provided that: "Notwithstanding any other provision of the Plan, no payment or Distribution shall be made with respect to any Claim to the extent it is a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim." (CP 204, § 7.2).[2]

### C. The Adversary Proceeding to Invalidate the IRS's Claim

On November 1, 1999, Ms. Cummings sought innocent spouse relief from the IRS in accordance with 26 U.S.C. § 6015, claiming that she should not be obligated to pay the taxes arising from the 1994 joint income tax return. On July 11, 2000, the IRS denied Debtor's request. The IRS's Appeals Office affirmed the denial.

After exhausting her administrative remedies, Debtor filed an adversary proceeding in the bankruptcy court seeking a declaration that the IRS's claim was invalid and should not be allowed. *See Susan Cummings v. United States,* Adv. No. 02–3300–BKC–SHF–A (Bankr.S.D.Fla.) (filed on October 11, 2002). In the Adversary Proceeding, Debtor argued that she should be entitled to relief from the tax obligation for two reasons: (1) Debtor was an innocent spouse under 26 U.S.C. § 6015; and, (2) the IRS was estopped from pursuing the Debtor for payment of these funds both because she had already remitted payment through the funding of the First Escrow Account and because the IRS, through its consent to allow Mr. Cummings to use monies in the First Escrow Account for a purpose other than payment of the tax for which the account was established, in effect made a loan to Mr. Cummings. (Adv. 1; Adv. 23). Ultimately, the bankruptcy court ruled in Ms. Cummings' favor.

### D. The Joint Motion for a Pro–Rata Distribution

During the pendency of the adversary proceeding, the IRS and Tim Givens filed a "Joint Motion of the United States of America and Tim Givens Building & Remodeling, Inc., to Compel Distribution of Funds and to Dismiss or Convert the case

---

**2.** Bankruptcy Judge Friedman issued the Pro–Rata Order in violation of the Confirmed Plan which specifically states that the IRS's Claim would become an Allowed Claim only upon the entry of a Final Order on the Debtor's objections. (CP 204 § 5.1.1). Since the Adversary Proceeding seeking to establish the invalidity of the IRS claim was pending, the IRS's claim had not yet become an Allowed Claim. Moreover, it is clear from the record that had the appeal not become moot, the Order would have been reversed. Judge Cooke's Order mooting the appeal evidences her reliance on the IRS's representations that any funds improperly disbursed would be returned to the Debtor.

to Chapter 7." ("Joint Motion"). In the Joint Motion, the IRS stated that granting the premature "distribution would be without prejudice to Debtor seeking a refund of the amount paid." (CP 258, ¶ 15). At the June 10, 2003 hearing on the Joint Motion, Tim Givens' Attorney also stated: "the distribution would be without prejudice to debtor seeking refund of the amount paid." (CP 287 at 9). The IRS was present at the hearing and did not object or correct the statements. In addition, Mr. Lortie, the attorney for the IRS, stated: "(i)n the event we do lose the adversary, Judge, it would be refunded [as] in any other case. That's the way we operate." (June 10, 2003 Hearing, CP 287 at 25). Bankruptcy Judge Friedman granted the distribution of funds despite the fact that the claim was contested in the pending adversary proceeding.

On July 7, 2003, the bankruptcy court entered an order directing Ms. P. Dzikowski, as Disbursing Agent, to disburse 86% of the funds in escrow to the United States and 14% of the funds to Tim Givens (the "Pro–Rata Order"). The Order indicated:

> It is furthermore ORDERED that to the extent the Debtor is the prevailing party, entitled to relief pursuant to 26 U.S.C. § 6015, in the adversary proceeding styled *Susan Cummings v. United States*, Adv. No. 02–3300–BKC–SHF–A, and in all appeals thereof, the United States will return to the disbursing agent that portion of the Funds in Escrow distributed to the United States pursuant to this Order, and such returned funds shall be applied first to any

remaining balance of the claim by [Tim] Givens, with any remaining portion of the returned funds to be distributed in accordance with the confirmed plan of reorganization.

(CP 264 at 2).[3]

Ms. Cummings promptly moved for reconsideration of the Pro–Rata Order; the bankruptcy court heard arguments on the motion. At the hearing, Debtor voiced her concerns as to whether the IRS would return the money if Debtor was successful in the adversary proceeding. Mr. Lortie once again stated to the bankruptcy court that "the order is very clear in terms of a refund in the event the debtor is the prevailing party [in the adversary proceeding]. Therefore, the motion should be denied." (Aug. 19, 2003 Hearing, CP 288 at 15). The motion for reconsideration was denied and on December 24, 2003, Disbursing Agent Ms. P. Dzikowski disbursed $203,416.33 to the United States. The United States applied this payment to Ms. Cummings' disputed outstanding tax liability for the 1994 tax year, which, as of June 10, 2003, totaled $261,139.73 consisting entirely of accrued penalties and interest. The Debtor appealed the Pro–Rata Order, the appeal was docketed in this District Court as Case No. 03–81037–CIV–COOKE.

**E. Ms. Cummings' Motion for Summary Judgement in the Adversary Proceeding**

While the Joint Motion was pending, Ms. Cummings moved for summary judg-

---

**3.** During the hearing, Mr. Lortie, stated: "In the event we do lose the adversary, Judge, [the funds] will be refunded [as] in any other case. That's the way we operate." (June 10, 2003 Hearing, CP 287 at 25). The bankruptcy judge asked Mr. Lortie to draft the Order and "provide that language in the order." (*Id.*). Thus, the narrow language included in the Order was drafted by the IRS and is inconsistent with the bankruptcy judge's request that the order provide the broader stipulation made in open court—that in the event the IRS lost the adversary, regardless of the theory under which it lost, the money would be refunded.

ment against the United States in the adversary proceeding. The motion for summary judgment sought: (1) that the bankruptcy court review the denial of Debtor's request for relief under the innocent spouse provisions of 26 U.S.C. § 6015; and, (2) a determination that the IRS's lien rights in the sales proceeds were invalid. Ms. Cummings argued that the doctrine of equitable estoppel prevented the IRS from seeking to recover payment of the 1994 tax obligation from the Debtor for a second time.

Prior to resolution of the appeal of the Pro–Rata Order pending in front of U.S. District Court Judge Cooke, the bankruptcy court issued its ruling on Ms. Cummings' Summary Judgment Motion, wherein it found that Debtor, after the establishment of the First Escrow Account, pre-petition, had no further obligation to the IRS arising from the 1994 tax year. Thus, Ms. Cummings was the prevailing party in the adversary proceeding against the IRS. The bankruptcy court's Summary Judgment Order provided, in relevant parts, as follows:

1. As part of the Final Judgment of Dissolution of Marriage, certain real estate properties owned by the Cummings would be liquidated with the proceeds being deposited in a trust account (the "First Escrow Account") for payment of the 1994 tax obligation. (DE 3–5 at 49).

2. As of the time of the completion of the real estate sales, the proceeds generated were sufficient to satisfy the 1994 tax obligation in its entirety, including interests and penalties. (*Id.* at 50).

3. Thereafter, over Ms. Cummings' objection, the IRS authorized Mr. Cummings to use $100,000 from the First Escrow Account to satisfy a personal outstanding support obligation. (*Id.*).

4. In seeking the distribution of the First Escrow Account, Mr. Cummings in effect received a loan from the IRS. (*Id.*). **"Therefore, it is Lawrence Cummings from whom the IRS should be seeking repayment."** (*Id.*).

5. **"Ms. Cummings may challenge the repayment of the disbursed funds based upon the theory of equitable estoppel.** By virtue of the fact that sufficient funds have already been paid on behalf of Ms. Cummings and Mr. Cummings to satisfy the 1994 tax obligation, **Ms. Cummings should not be required to make the payment twice."** (*Id.* at 50–51).

6. A claim against Ms. Cummings for the deficiency amount of the 1994 tax obligation "would be unjust and contrary to applicable law" because, as of 1997 when the proceeds of the real estate sales were deposited in the First Escrow Account, "she had provided for full payment of the tax liability." (*Id.* at 52–53).

After holding that Ms. Cummings had satisfied her tax liability through the funding of the First Escrow Account and that the IRS was estopped from seeking any further payments from Ms. Cummings, the bankruptcy court held that 26 U.S.C. § 6015(f) excluded judicial review of the IRS's determination that Ms. Cummings was not entitled to "innocent spouse" under that section. Nonetheless, the bankruptcy court specifically held that "Plaintiff Susan Cummings has no further obligation beyond any remaining escrowed funds in the First Escrow Account as to any indebtedness arising from the 1994 tax year." (*Id.* at 54). No appeal was taken from this order and it has become final.

## F. Appeal of the Pro–Rata Order

In Appellee's Initial Brief of the Appeal of the Pro–Rata Order, the IRS stated: "In addition, the [Pro–Rata] Order contains a specific provision requiring the refund of the disbursement to the Internal Revenue Service if the Appellant ultimately prevails in her pending adversary case against the United States." (Appeal 11 at 2). It also stated: "If the bankruptcy court determines, through the presently pending adversary proceeding, that the Appellant is entitled to innocent relief, the order under review will require restoration of the *status quo ante* by directing a refund. In view of the prejudice to the IRS and [Tim] Givens through the delay in disbursing of funds in escrow, the bankruptcy court entered a limited order that represents no detriment to Appellant." (*Id.* at 16). Finally, the IRS stated: " . . . if the funds are ultimately refunded to the Appellant in accordance with the ProRata Order, she will receive interest at a rate that is arguably higher than through her attorneys' escrow account." (*Id.* at 22).

Similarly, Appellee Tim Givens' Answer Brief stated: "The Debtor can continue with her adversary. The bankruptcy court ordered the return on the money paid to the IRS, if she is successful" (Appeal 10 at 7); and, "Moreover, the bankruptcy court's order clearly sets forth that if the Debtor is successful in her litigation with the IRS, the monies will be refunded. The Debtor does not, nor can she, cite any authority that the bankruptcy court cannot order the refund of the money or enforce its order." (*Id.* at 8). The IRS did not object to Tim Givens' representations to this Court.

Ultimately, based upon the bankruptcy court's ruling that the Debtor had no further obligation to the IRS, District Court Judge Cooke, in August 2006, dismissed the Debtor's appeal of the Pro–Rata Order as moot. In the Order dismissing the Appeal as moot, Judge Cooke stated: "the bankruptcy court held that if **Appellant prevailed in her adversary proceeding against the IRS** then the IRS would be required to return that portion of the escrow funds distributed to it and such returned funds would be first applied to any balance remaining on Tim Givens' claim with any remaining portion to be distributed in accordance with the confirmed reorganization plan." (DE 3–4 at 23) (emphasis added). Moreover, Judge Cooke noted that: "the bankruptcy court held that Appellant was not liable for the outstanding 1994 tax obligation that resulted from Lawrence Cummings personal use of the funds held in escrow account one [First Escrow Account]. Consequently, the bankruptcy court's decision renders the present appeal moot because **since Appellant was found not to be liable for the outstanding 1994 tax obligation the [bankruptcy court's] prorata order directing distribution of funds to pay off that obligation is moot.**" (DE 3–4 at 25) (emphasis added).

## G. The Motion to Compel

As of October 2006, the IRS had not returned the funds it received from the Escrow Account Two. Therefore, the Disbursing Agent filed the instant Motion to Compel the return of the funds. At the March 22, 2007 hearing on the Motion to Compel, the Disbursing Agent was joined in seeking a return of the prematurely distributed funds by: (1) the Debtor and Debtor–in–Possession, Ms. Cummings; (2) Tim Givens, the holder of the Class III claim entitled to distribution from the Escrow Account Two on its claim after payment of any allowed IRS claim; and, (3) Dzikowski & Walsh, the holder of an allowed administrative claim under the Confirmed Plan entitled to distribution from the Escrow Account Two after the allowed

claim of Tim Givens. During the hearing, the bankruptcy court heard arguments by Ms. P. Dzikowski, Dzikowski & Walsh, Ms. Cummings, and Tim Givens in support of the motion, and by the United States in opposition to it.

At the hearing Mr. Lortie took the position that the Motion to Compel should be denied because, pursuant to the narrow language in the bankruptcy court's order, the IRS only has to return the disbursed money if Ms. Cummings was successful in the review of her innocent spouse request pursuant to 26 U.S.C. § 6015; since Ms. Cummings did not succeed in obtaining innocent spouse relief in accordance with 26 U.S.C. § 6015(f), the United States has no obligation to refund any of the funds disbursed per the Pro–Rata Order, even if the disbursement was premature and improper. The IRS further argues that as of December 24, 2003, when it received $203,416.33 from the Second Escrow Account, Ms. Cummings still owed more than $57,723 of unpaid penalties and accrued interest. According to the IRS, Ms. Cummings' successful invalidation of the IRS claim through the doctrine of equitable estoppel, rather than absolving her from the entire amount owed, only resulted in Ms. Cummings not been liable for the remaining $57,723 of unpaid penalties and accrued interest.

The bankruptcy court denied Ms. P. Dzikowski's Motion to Compel on two basis: (1) Dzikowski's lack of standing to bring the Motion; and, (2) application of the doctrine of *res judicata.* Specifically, the bankruptcy court found that Ms. P. Dzikowski's role as disbursing agent terminated on June 21, 2001, and, since she no longer has the authority to act as disbursing agent, Ms. P. Dzikowski does not have standing to bring the Motion to Compel. Although Dzikowski & Walsh, Ms. Cum-

mings, and Tim Givens joined Ms. P. Dzikowski's motion at the hearing, the bankruptcy court did not address whether any of these parties had standing.

As to *res judicata,* the bankruptcy court held that its September 27, 2005 Order granting in part and denying in part Ms. Cummings' Motion for Summary Judgment precludes review of the IRS's decision to deny Ms. Cummings innocent spouse relief under 26 U.S.C. § 6015(f). The bankruptcy court subsequently denied a motion to reconsider. This appeal taken by Ms. P. Dzikowski as Disbursing Agent and Dzikowski & Walsh as administrative creditor followed. Ms. Cummings, Debtor and Debtor–in–Possession, also took an appeal of the Bankruptcy Court's Order.[4] The appeals were consolidated by the bankruptcy court prior to transmittal.

## II. Standard of Review

█ District courts sit as appellate courts over bankruptcy decisions. *Miner v. Bay Bank & Trust Co. (In re Miner),* 185 B.R. 362, 365 (N.D.Fla.1995), aff'd, 83 F.3d 436 (11th Cir.1996). A district court reviews a bankruptcy court's legal conclusions de novo, *In re Englander,* 95 F.3d 1028, 1030 (11th Cir.1996), and a bankruptcy court's factual findings for clear error. Fed. R. Bankr.P. 8013; *In re Gamble,* 168 F.3d 442, 444 (11th Cir.1999).

█ When district courts review the factual findings of a bankruptcy court, the burden of showing that the bankruptcy court's findings are clearly erroneous is upon the appellant. *Acquisition Corp. of Am. v. Fed. Sav. & Loan Ins. Corp.,* 96 B.R. 380, 382 (S.D.Fla.1988). A finding of fact is not clearly erroneous unless "this court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been committed." *IBT*

4. Tim Givens did not appeal the bankruptcy court's order.

*Int'l, Inc. v. N. (In re Int'l Admin. Serv., Inc.)*, 408 F.3d 689, 698 (11th Cir.2005) (internal citations omitted). A bankruptcy court's application of the *res judicata* doctrine is subject to *de novo* review. *EEOC v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1285–1286 (11th Cir.2004).

### III. Analysis

#### A. Law of the Case Doctrine

■■ The law of the case doctrine "operates to create efficiency, finality, and obedience within the judicial system." *Allapattah Servs., Inc. v. Exxon Corp.*, 372 F.Supp.2d 1344, 1363 (S.D.Fla.2005) (quoting *Litman v. Mass. Mut. Life Ins. Co.*, 825 F.2d 1506, 1511 (11th Cir.1987)). Under the doctrine, "the findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal." *This That & the Other Gift & Tobacco, Inc. v. Cobb County*, 439 F.3d 1275, 1283 (11th Cir. 2006) (quoting *Heathcoat v. Potts*, 905 F.2d 367, 370 (11th Cir.1990)); *see also Wheeler v. City of Pleasant Grove*, 746 F.2d 1437, 1440 (11th Cir.1984) (stating that courts are "bound by findings of fact and conclusions of law made by the court of appeals in a prior appeal of the same case."); *United States v. Amedeo*, 487 F.3d 823, 829–830 (11th Cir.2007) ("The law of the case doctrine, self-imposed by the courts, operates to create efficiency, finality, and obedience within the judicial system so that an appellate decision binds all subsequent proceedings in the same case.") (internal quotations and citations omitted).

■ In addition, the law of the case doctrine applies to lower court rulings that have not been challenged on appeal.

*United States v. Escobar–Urrego*, 110 F.3d 1556, 1560 (11th Cir.1997); *United States v. Garzon*, 223 Fed.Appx. 899, 901 (11th Cir.2007) ("[L]ower court rulings that have not been challenged on a first appeal will not be disturbed in a subsequent appeal."). Therefore, "a legal decision made at one stage of the litigation, unchallenged in a subsequent appeal when the opportunity existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time." *Escobar–Urrego*, 110 F.3d at 1560. To avoid the application of the law the case, the parties must demonstrate that the case fits within one of the three recognized narrow exceptions: (1) a subsequent trial produces substantially different evidence; (2) controlling authority has since made a contrary decision of law applicable to that issue; or, (3) the prior decision was clearly erroneous and would work manifest injustice. *Id.; United States v. Stinson*, 97 F.3d 466, 469 (11th Cir.1996).

■ It is a well-settled principle in the Eleventh Circuit that the law of the case doctrine encompasses issues previously "*decided by necessary implication* as well as those decided explicitly." *Id.* (quoting *Dickinson v. Auto Center Mfg. Co.*, 733 F.2d 1092, 1098 (5th Cir.1983)) (emphasis in original)[5]; *This That & the Other Gift & Tobacco, Inc.*, 439 F.3d at 1283 ("[T]he law-of-the-case doctrine bars relitigation of issues that were decided either explicitly or by necessary implication."); *Schiavo v. Schiavo*, 403 F.3d 1289, 1291 (11th Cir. 2005) ("The doctrine operates to preclude courts from revisiting issues that were decided explicitly or by necessary implication in a prior appeal."); *Klay v. Pacificare Health Sys., Inc.*, 389 F.3d 1191, 1198

---

**5.** In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

(11th Cir.2004) ("Realizing that a prior decision is law of the case as to matters decided explicitly and by necessary implication, we find that our prior affirmation of the district court constitutes law of the case here ...."), cert. denied, 544 U.S. 1061, 125 S.Ct. 2523, 161 L.Ed.2d 1111 (2005); *A.A. Profiles, Inc. v. City of Fort Lauderdale,* 253 F.3d 576, 582 (11th Cir. 2001) ("Generally, the law of the case doctrine requires a court to follow what has been explicitly or by necessary implication decided by a prior appellate decision.").

■■■ Here, the law of the case applies to bar reconsideration of the bankruptcy court's factual findings and legal conclusions within its Summary Judgment Order since a final judgment in favor of Debtor was entered on February 2, 2006 and the IRS did not appeal the decision. Likewise, Judge Cooke's Order dismissing as moot Ms. Cummings' appeal of the Pro–Rata Order sets forth the law of this case because it represents a final order by an appellate court and neither party appealed it. Furthermore, the IRS has failed to establish that any of the narrow exceptions to the doctrine apply to either of these orders. Therefore, legal conclusions and factual findings in these orders bind the parties in this appeal.

In the Summary Judgment Order, Bankruptcy Judge Friedman concluded that "[b]y virtue of the fact that sufficient funds have already been paid on behalf of Ms. Cummings and Lawrence Cummings to satisfy the 1994 tax obligation, Ms. Cummings should not be required to make the payment twice." (Adv. 70 at 4). The bankruptcy court further concluded that the IRS bore "the burden of securing repayment from Lawrence Cummings, since it is Lawrence Cummings who, in effect, 'borrowed' the funds from the IRS." (*Id.*). The bankruptcy court went on to conclude that:

A claim against Ms. Cummings for the deficiency amount, under circumstances wherein *she had provided full payment of the tax liability would be unjust and contrary to applicable law.* Sufficient evidence exists to support the finding that all of the elements of estoppel have been established as to the portion of the [First Escrow Account] disbursed to Mr. Cummings ... The IRS was entrusted to utilize the funds as established by the [First Escrow Account] to satisfy the 1994 tax obligation.... Ms. Cummings relied upon the IRS to utilize the funds as they were intended. The IRS chose not to utilize the funds in that matter and therefore should now be estopped from asserting a further claim against Ms. Cummings, *who provided for payment to the IRS in full.*

(Adv. 70 at 6) (emphasis added). Finally, the bankruptcy court ruled that: "Plaintiff Susan Cummings has no further obligation beyond any remaining escrowed funds in [First Escrow Account] as to any indebtedness arising from the 1994 tax year." [6]

---

6. The IRS attempts to grossly distort the meaning of the bankruptcy court's order by arguing that the words "Cummings has no *further obligation beyond any* remaining escrowed funds in [First Escrow Account] as to any indebtedness arising from the 1994 tax year" should be read to mean that Ms. Cummings' obligation was not satisfied through the funding of the First Escrow Account but rather through the combination of the funding of the First Escrow Account **and** the Pro–Rata Distribution from the Second Escrow Account. The IRS takes the absurd position that had the bankruptcy court believed that the funds disbursed from the Second Escrow Account should be returned it would have stated "Ms. Cummings has *no obligation beyond any* remaining escrowed funds in [First Escrow Account]...." This argument is wholly without merit. The Order is clear that Ms. Cummings satisfied her obligation upon the funding of the First Escrow Account and that

Implicit in this order is the ruling that the IRS must return the improperly disbursed funds. This implication by necessity is the only reasonable interpretation of the bankruptcy court's order. Not implying this ruling leads to the absurd interpretation, improperly advanced by the IRS during the present appeal, that a court would rule that a person who has fulfilled her obligation to the IRS is not entitled to receive a refund of funds she was compelled to pay despite having no obligation to pay them. Therefore, I conclude, as a matter of law based on the evidence on the record, that the law of this case includes the implicit ruling by the bankruptcy court that the IRS was under an obligation to return the improperly disbursed funds to the disbursing agent. Since the IRS did not appeal this decision, the IRS is bound by its findings and conclusions and must return the funds.

Furthermore, any ambiguity as to the IRS's obligation to return the funds has been clarified by Judge Cooke's Order. In her appeal of the Pro–Rata Order, Ms. Cummings argued that: (1) the bankruptcy court did not have jurisdiction to direct pro-rata distributions; and, (2) that the Pro–Rata Order denied her of her procedural due process rights. During the appeal, the IRS informed Judge Cooke that the Pro–Rata Order "contains a specific provision requiring the refund of the disbursement to the Internal Revenue Service if the Appellant ultimately prevails in her pending adversary case against the United States." (Appeal 11 at 2). Judge Cooke "delayed consideration of the ...

appeal to allow the bankruptcy court to resolve [the adversary] proceeding as its resolution would likely impact the ... appeal." (Appeal 20 at 6). After the bankruptcy court entered a final judgment in favor of Ms. Cummings, Judge Cooke concluded that the Pro–Rata Order and the Appeal were moot. Judge Cooke relied on the following passage from the bankruptcy court's order to conclude that the appeal was moot:

> Ms. Cummings established the IRS trust account [First Escrow Account] for the specific purpose of satisfying the outstanding 1994 tax obligation. After sufficient funds were deposited into the IRS trust account [First Escrow Account] to satisfy the outstanding tax obligation in full, the IRS, acting withing [sic] the scope of its authority, chose to allow Lawrence Cummings to utilize a portion of the funds in the trust account to pay a personal obligation that he owed to Ms. Cummings. The Court is fully cognizant of the circumstances as they appeared at the time of the April 16, 1997 hearing. Lawrence Cummings was in a chapter 11 bankruptcy, and it was represented to the Court, the IRS, and Ms. Cummings by Lawrence Cummings that there would be sufficient funds remaining in Lawrence Cummings bankruptcy estate to satisfy any outstanding tax obligation. Unfortunately, the IRS, in effect, decided to release funds to Lawrence Cummings based on a premise that would prove to be inaccurate, i.e., that sufficient funds would be generated from the administration of the

"Ms. Cummings should not be required to make the payment twice." (Adv. 70 at 4). Furthermore, the only reasonable interpretation of the Order is that the language was chosen because the bankruptcy court rejected Ms. Cummings' argument that the IRS was estopped from collecting **any portion** of the funds in First Escrow Account. (*Id.* at 6).

By holding that Ms. Cummings had "no further" obligation, the bankruptcy court ruled that the funds within the First Escrow Account belonged to the IRS but that Ms. Cummings did not have to pay any additional monies. There is no evidence in the record that supports the IRS's incredulous interpretation.

Lawrence Cummings bankruptcy estate to pay any remaining 1994 tax obligation. *A claim against Ms. Cummings for the deficiency amount, under circumstances wherein she had provided full payment of the tax liability, would be unjust and contrary to applicable law.* (Appeal 20 at 7) (citing Adv. 70 at 5–6) (emphasis added). Based on these findings by the bankruptcy court, Judge Cooke concluded that "Appellant had no further obligation beyond any remaining escrow funds in the IRS trust account [First Escrow Account] for any indebtedness arising from the 1994 tax year." (Appeal 20 at 6). Judge Cooke further noted that "the bankruptcy court held that *if Appellant prevailed in her adversary proceeding against the IRS* then the IRS would be required to return that portion of the escrow funds distributed to it and such returned funds would be first applied to any balance remaining on Tim Givens' claim with any remaining portion to be distributed in accordance with the confirmed reorganization plan." (Appeal 20 at 5) (emphasis added). Moreover, Judge Cooke concluded that: "the bankruptcy court held that Appellant was not liable for the outstanding 1994 tax obligation that resulted from Lawrence Cummings personal use of the funds held in escrow account one. Consequently, the bankruptcy court's decision renders the present appeal moot because *since Appellant was found not to be liable for the outstanding 1994 tax obligation the [bankruptcy court's] pro-rata order directing distribution of funds to pay off that obligation is moot.*" (Appeal 20 at 7) (emphasis added). These conclusions constitute the law of this case and bind the parties in this appeal.

Under the law of the case doctrine, therefore, the IRS is precluded from relitigating Ms. Cummings' obligation for the 1994 tax year—the law of this case is that

Ms. Cummings fulfilled her obligation upon the funding of the First Escrow Account. The IRS is further precluded from relitigating the implicit ruling in Bankruptcy Judge Friedman and Judge Cooke's Orders that, because Ms. Cummings prevailed in invalidating the IRS claim to the proceeds in the Second Escrow Account, the IRS must return the funds disbursed pursuant to the now mooted bankruptcy court's Pro–Rata Order.

## B. Judicial Estoppel

■■■ Under the Doctrine of Judicial Estoppel, "where a party assumes a certain position in a legal proceeding and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Allapattah Servs., Inc. v. Exxon Corp.*, 372 F.Supp.2d 1344, 1367 (S.D.Fla.2005)(citing *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)). The doctrine is used to prevent "a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Id.* (citing *New Hampshire*, 532 U.S. at 749, 121 S.Ct. 1808). Thus, "[j]udicial estoppel is an equitable doctrine invoked at a court's discretion, designed to protect the integrity of the judicial process." *Stephens v. Tolbert*, 471 F.3d 1173, 1177(11th Cir.2006).

■■■ In considering the flexible standard of the judicial estoppel doctrine, courts traditionally look at three factors: (1) whether a party's later position is clearly inconsistent with its earlier positions; (2) whether a party succeeded in persuading a court to accept an earlier position, so that judicial acceptance of an

inconsistent position creates the impression that either the first or the second court was misled; and, (3) whether the party with an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *See, e.g., id.; Allapattah Servs., Inc.,* 372 F.Supp.2d at 1367. The Supreme Court has held that this list of factors is not exhaustive, but rather, "in enumerating these factors, we do not establish inflexible pre-requisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts." *New Hampshire,* 532 U.S. at 750–751, 121 S.Ct. 1808.

▮▮▮ "The Eleventh Circuit has repeatedly held that the doctrine of judicial estoppel is applied to the calculated assertion of sworn divergent positions, and is designated to **prevent parties from making a mockery of justice by inconsistent pleadings.**" *Allapattah Servs., Inc.,* 372 F.Supp.2d at 1367 (emphasis added). Pleadings, as well as statements by parties and counsel in open court, are equivalent to sworn statements for purposes of judicial estoppel. *See, id.* at 1368, n. 12 (finding that the Eleventh Circuit has recognized that by filing pleadings, and later advocating positions consistent therewith, an attorney makes representations to the court equivalent to an oath for purposes of judicial estoppel).

▮▮▮ I find that in addition to the Law of the Case Doctrine, the doctrine of judicial estoppel applies in this case to prevent the IRS from arguing that the prematurely disbursed funds under the Pro–Rata Order should not be returned. In the pleadings and at the hearing on the Joint Motion, the IRS repeatedly stated that if Ms. Cummings was successful in her adversary proceedings, the IRS would refund the improperly disbursed funds. Specifically, Mr. Lortie made the following statements:

1. In the Joint Motion, Mr. Lortie argued that granting the premature "distribution would be without prejudice to Debtor seeking a refund of the amount paid." (CP 258, ¶ 15).

2. At the June 10, 2003 hearing on the Joint Motion, Mr. Lortie said to former Bankruptcy Judge Friedman: "(i)n the event we do lose the adversary, Judge, [the funds] would be refunded [as] in any other case. That's the way we operate." (June 10, 2003 Hearing, CP 287 at 25).

3. At the August 19, 2003 hearing on Ms. Cummings Motion for Reconsideration, Mr. Lortie said: "the order is very clear in terms of a refund in the event the debtor is the prevailing party [in the adversary proceeding]."

4. In its Initial Brief of Appellee on the Appeal before Judge Cooke, the IRS wrote: "In addition, the [Pro–Rata] Order contains a specific provision requiring the refund of the disbursement to the Internal Revenue Service if the Appellant ultimately prevails in her pending adversary case against the United States." (Appeal 11 at 2).

5. The brief also provided that: "If the bankruptcy court determines, through the presently pending adversary proceeding, that the Appellant is entitled to innocent relief, the order under review will require restoration of the *status quo ante* by directing a refund. In view of the prejudice to the IRS and [Tim] Givens through the delay in disbursing of funds in escrow, the bankruptcy court entered a limited order that

represents no detriment to Appellant." (Appeal 11 at 16).

6. The IRS also informed Judge Cooke that: "... if the funds are ultimately refunded to the Appellant in accordance with the Pro–Rata Order, she will receive interest at a rate that is arguably higher than through her attorneys' escrow account." (Appeal 11 at 22).

7. The IRS was silent when, at the June 10, 2003 on the Joint Motion, the attorney for Tim Givens represented to Bankruptcy Judge Friedman that: "the distribution would be without prejudice to debtor seeking refund of the amount paid." (June 10, 2003 Hearing, CP 287 at 9).

8. The IRS also did not correct co-appellee Tim Gives' Answer Brief submitted to this Court on the appeal of the Pro Rata Order which stated: "The Debtor can continue with her adversary. The bankruptcy court ordered the return on the money paid to the IRS, if she is successful" (Appeal 10 at 7); and, "Moreover, the bankruptcy court's order clearly sets forth that if the Debtor is successful in her litigation with the IRS, the monies will be refunded. The Debtor does not, nor can she, cite any authority that the bankruptcy court cannot order the refund of the money or enforce its order." (*Id.* at 8).

Bankruptcy Judge Friedman relied on these representations when it entered the Pro–Rata Order disbursing funds despite the Confirmed Plan's clear mandate that the IRS should not receive any monies until the adversary proceeding was decided. The record reveals that Bankruptcy Judge Friedman instructed Mr. Lortie to draft an order granting the pro-rata distribution and to include language that the IRS would refund the money if Ms. Cummings was successful in her adversary proceeding. The record also shows that Judge Cooke relied on the IRS's statements that the funds would be returned to determine that, since Ms. Cummings had in fact prevailed in the adversary proceeding, the appeal was moot and the IRS would return the funds.

At the hearing on the present appeal, I asked Mr. Lortie whether he had represented to the bankruptcy court that if Ms. Cummings was successful in her adversary proceeding the disbursed funds would be refunded. Mr. Lortie admitted making these statements. The position the IRS now wishes to take—that only if Ms. Cummings was successful on her claim of innocent spouse relief under § 6015 would the IRS return improperly disbursed funds—is clearly inconsistent with the earlier position that if Ms. Cummings was successful in her adversary, regardless of the reason, the funds would be refunded. The fact remains that the bankruptcy court held that Ms. Cummings had satisfied her tax liability upon the funding of the First Escrow Account. If Ms. Cummings did not owe any money, any funds received by the IRS must be returned, regardless of the theory under which Ms. Cummings was found to have satisfied her tax liability. This is specially true if, as here, the IRS promised the court that a premature distribution would cause no prejudice to appellant since it would return funds if they were ultimately found to have been improperly disbursed.

In addition, acceptance of the IRS's position during this appeal "creates the impression that either the first or the second court was misled." *Stephens,* 471 F.3d at 1177. A review of the record of the main bankruptcy case, the adversary proceeding, and the appeals to Judge Cooke and myself, demonstrate that Bankruptcy

Judge Friedman and Judge Cooke were intentionally misled to believe that the IRS would return the improperly disbursed funds. This conduct is of special concern when taken by the IRS, an agency of the United States Government, who has a duty to uphold the laws of the United States and deal fairly with its citizens. Allowing the IRS to argue that the Motion to Compel should be denied would result in the appearance that either the bankruptcy court and this court were misled in the proceedings related to the Pro–Rata Order or that the bankruptcy court and this Court were misled in the present proceedings. The doctrine of judicial estoppel was designed to prevent this travesty against the judicial system.

Finally, as to the third factor, acceptance of the IRS's inconsistent position would result in the IRS deriving an unfair advantage. In this case, Ms. Cummings deposited sufficient funds to satisfy her 1994 tax liability in the First Escrow Account. The IRS, over Ms. Cummings' objections, permitted Mr. Cummings to use the funds for something other than satisfaction of the joint tax liability. Allowing Mr. Cummings to obtain $100,000 from the First Escrow Account resulted in an unpaid balance to the IRS. The IRS unjustifiable attempted to collect this amount from Ms. Cummings. For the past several years, the IRS has continued to add penalties and interests to the amount allegedly owed by Ms. Cummings. Ms. Cummings position has always been that she satisfied her debt by depositing into the First Escrow Account sufficient funds to cover the amount due. The bankruptcy court settled the dispute in favor of Ms. Cummings. Specifically, the bankruptcy court held that Ms. Cummings' liability was satisfied upon the funding of the First Escrow Account and that the IRS needed to pursue payment of the deficient amount from Mr. Cummings since, in essence, the IRS

loaned him the money. In earlier proceedings the IRS promised to refund any monies it was not entitled to. The bankruptcy court held that the IRS was not entitled to the prematurely disbursed funds. Therefore, the funds disbursed pursuant to the Pro–Rata Order must be returned to the Disbursing Agent. Not compelling the return of those funds results in an unjustifiable windfall for the IRS and a detriment to Appellants.

Moreover, additional considerations inform my decision to invoke the judicial estoppel doctrine in this case. *See New Hampshire*, 532 U.S. at 751, 121 S.Ct. 1808 ("Additional considerations may inform the doctrine's application in specific factual contexts."). During the hearing on the Joint Motion, Mr. Lortie told the bankruptcy judge that: "In the event we do lose the adversary, Judge, [the funds] will be refunded [as] in any other case. That's the way we operate." (June 10, 2003 Hearing, CP 287 at 25). The judge asked Mr. Lortie to "provide that language in the order." (*Id.* at 25). Despite the bankruptcy judge's clear mandate to provide language consistent with the IRS's promise to return the funds if Ms. Cummings prevailed in her adversary proceeding against the IRS, Mr. Lortie opted to carefully craft and significantly narrow the bankruptcy judge's order by including language limiting the IRS's obligation to return improperly disbursed funds only if Ms. Cummings won her adversary proceeding under a specific theory. I find it extremely unethical for Mr. Lortie to mislead the bankruptcy judge by including narrower language in the Order—language inconsistent with the bankruptcy judge's instructions that the order include language consistent with Mr. Lortie's broad stipulation made in open court. The IRS cannot be allowed to mislead the court, create a loophole by inserting language in

a proposed order contrary to the instructions of the bankruptcy judge, and then use that improperly inserted language to derive a benefit. Allowing the IRS to do so would make a mockery of the judicial system. I thus find that the IRS is judicially estopped from arguing that any funds improperly disbursed pursuant to the Pro–Rata Order should not be returned to the Disbursing Agent, Ms. P. Dzikowski.

## C. Standing

■ Article III of the United States Constitution limits federal courts' subject matter jurisdiction to "cases or controversies." *Bowen v. First Family Fin. Servs.*, 233 F.3d 1331, 1339 (11th Cir. 2000). This case or controversy requirement has resulted in the development of various justiciability doctrines, including standing, ripeness, and mootness. *Id.* (citing *Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423, 1427 (D.C.Cir.1996)). To satisfy the constitutional requisites of standing, a plaintiff must demonstrate three factors: (1) the party must have suffered actual injury or show the imminence of such injury—abstract harm is insufficient; (2) the injury must be fairly traceable to the alleged unlawful conduct; and, (3) a demonstration must be made that the requested relief likely will redress the injury. *E.F. Hutton & Co. v. Hadley*, 901 F.2d 979, 984 (11th Cir.1990) (internal citations and quotations omitted); *see also Bowen*, 233 F.3d at 1339 (The doctrine of standing "requires that the plaintiff show, among other things, that she has suffered an injury in fact—some harm to a legal interest that is actual or imminent, not conjectural or hypothetical.") (internal quotations and citations omitted). The party whose standing is questioned has the burden of proving injury in fact, causation and redressability.

*E.F. Hutton & Co. v. Hadley*, 901 F.2d at 984.

■ Pursuant to § 1109 of the Bankruptcy Code, a "party in interest" has the right to be heard in a chapter 11 bankruptcy case. A party in interest includes "the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee ...". 11 U.S.C. § 1109(b); *see also Kaiser Aerospace & Elecs. Corp. v. Teledyne Indus., Inc. (In re Piper Aircraft Corp.)*, 244 F.3d 1289, 1304 n. 11 (11th Cir.), cert. denied, 534 U.S. 827, 122 S.Ct. 66, 151 L.Ed.2d 33 (2001). A party in interest "is generally understood to include all persons whose pecuniary interests are directly affected by the bankruptcy proceedings." *In re Cummings*, 371 B.R. 565, 568 (Bankr.S.D.Fla.2007).

■ In the context of bankruptcy appeals, the rules for standing have been somewhat altered to allow parties who may not have been involved in the original litigation to appeal an order that is detrimental to their rights. *See generally Westwood Cmty. Two Ass'n, Inc. v. Barbee (In re: Westwood Comty. Two Ass'n, Inc.)*, 293 F.3d 1332 (11th Cir.2002). To determine whether an individual has standing to appeal a bankruptcy court's order, the Eleventh Circuit applies the "person aggrieved" doctrine which "holds that only a person aggrieved has standing to appeal a bankruptcy court's order." *Id.* at 1335. An aggrieved party is defined as "those parties having a direct and substantial interest in the question being appealed." *Id.* (citing *In re Odom*, 702 F.2d 962, 963 (11th Cir.1983)) (internal quotations and citations omitted). This prudential theory of standing restricts standing to those who are "directly and adversely affected pecuniarily by the order." *Id.* (citing *Harker v. Troutman (In re Troutman Enters.)*, 286 F.3d 359, 364 (6th Cir.2002)) (internal quo-

tations and citations omitted). In essence, to have standing in a bankruptcy appeal, the party must have a financial stake in the order being appealed. *Id.* To have a financial stake, the order must diminish the party's property, increase their burdens or impair their rights. *Id.*

The bankruptcy court held that Ms. P. Dzikowski lacked standing because her role as disbursing agent ended on June 21, 2001. Moreover, the bankruptcy court concluded that even if Ms. P. Dzikowski was the disbursing agent, she would not have standing to bring the motion. The bankruptcy court indicated that it was relying on *In re Alan Wood Steel Co.*, 7 B.R. 697 (Bankr.D.Pa.1980) in finding that a Disbursing Agent: (1) is not a receiver, trustee or assignee of a debtor; (2) does not hold title to all or substantially all of the business or property of the debtor; and, (3) only has the limited power to distribute property subject to the control of the Court. Based on these findings, the bankruptcy court concluded that Ms. P. Dzikowski did not have standing to bring the motion because her attempt to compel the IRS to return the funds was well beyond the scope of her duties. (March 22, 2007 Hearing Transcript at 56).

Although Ms. Cummings, Tim Givens, and Dzikowski & Walsh joined Ms. P. Dzikowski's Motion during the March 22, 2007 hearing, the bankruptcy court did not make a determination as to whether: (1) Ms. Cummings, as Debtor and Debtor–in–Possession; (2) Tim Givens, as a Class III creditor next in line to receive payment from the Escrow Account Two; and, (3) Dzikowski & Walsh, as holder of an allowed administrative claim, had standing to bring the motion. As explained more fully below, I conclude that the bankruptcy court committed clear error in finding that Ms. P. Dzikowski's authority to act as Disbursing Agent terminated on June 2001.

Additionally, upon a *de novo* review of the record, I reverse the bankruptcy court's legal conclusion that Ms. P. Dzikowski did not have standing and I further conclude that Ms. Cummings, Tim Givens, and Dzikowski & Walsh also had standing to bring the Motion to Compel. Finally, I conclude that all appellants have standing to bring the instant appeal.

### 1. Disbursing Agent's Standing

 Disbursing agents have a fiduciary obligation to maximize the estate flows to the unsecured creditors and represent their interests. *Alary Corp. v. Sims (In re Associated Vintage Group, Inc.)*, 283 B.R. 549, 560 (9th Cir. BAP 2002). Distributions upon a debtor's claim are directed to the disbursing agent. *See In re Cummings*, 371 B.R. 565, 568 (Bankr.S.D.Fla.2007). Thus, a disbursing agent's pecuniary interest is affected when a court orders disbursement of funds held in an escrow account because the amounts disbursed will impact the balance available for payments of other claims directed to the disbursing agent. *See In re Cummings*, 371 B.R. 565, 568 (Bankr.S.D.Fla. 2007) ("Ms. Dzikowski's pecuniary interests ostensibly will be affected by this Court's fee awards, in that ... the amounts of the fee awards might impact upon the balance available for payment of her claim in the case of Susan Cummings, Debtor, as any distribution upon Ms. Cummings' claim would be directed to Ms. Dzikowski as disbursing agent under the Susan Cummings plan.").

Bankruptcy Judge Friedman concluded that there is no evidence in the record that Ms. P. Dzikowski's authority as Disbursing Agent extended past June 21, 2001. However, as recently as June 26, 2007, in an Order issued on Mr. Cummings separate bankruptcy proceedings, Bankruptcy Judge Friedman concluded just the oppo-

site. In holding that Ms. P. Dzikowski had standing to object to a pending fee application in Mr. Cummings' case, Bankruptcy Judge Friedman specifically found that "[a]s disbursing agent under the confirmed chapter 11 plan in the case of Susan Cummings, Debtor, Case No. 98–36372–BKC–SHF, Ms. Dzikowski's nexus to the instant bankruptcy proceeding, though tenuous, does qualify as a party in interest." *In re Cummings,* 371 B.R. 565, 568 n. 2 (Bankr. S.D.Fla.2007). Additionally, the transcript of the June 10, 2003 hearing on the Joint Motion indicates that Ms. P. Dzikowski was the escrow agent of the account at that time. (CP 287 at 10). Finally, the July 7, 2003 Order instructed Ms. P. Dzikowski, as Disbursing agent, to disburse funds to the IRS and Tim Givens in accordance with the Court's Pro Rata Order. (CP 274).

The record further demonstrates that Ms. P. Dzikowski maintained possession and control of the Second Escrow Account from prior to confirmation of the Confirmed Plan through December 24, 2003. The bankruptcy judge has not offered an explanation why it would direct Ms. P. Dzikowski to disburse funds in December 2003 if she was no longer the disbursing agent. More importantly, while her role as disbursing agent might have arguably ended when the funds in the Second Escrow Account were disbursed to the IRS and Tim Givens on December 24, 2003, upon return of the improperly disbursed funds, Ms. P. Dzikowski will regain possession of the escrow account and *the* duty to disburse those funds according to the Confirmed Plan. In fact. Bankruptcy Judge Friedman's ProRata Order provided that: "the United states will return **to the disbursing agent** that portion of the Funds in [the Second Escrow Account] distributed to the United States pursuant to this Order, and such returned funds shall be applied first to any remaining balance of the

claim by [Tim] Givens, with **any remaining portion of the returned funds to be distributed in accordance with the confirmed plan of reorganization."** (CP 264 at 2) (emphasis added). Thus, the Pro–Rata Order indicated not only that Ms. P. Dzikowski was still the disbursing agent but that she would regain her authority to act as such if the IRS was ordered to return any of the disbursed funds.

The bankruptcy court also stated that even if Ms. P. Dzikowski was the Disbursing Agent, she did not have standing to bring the motion. The bankruptcy court was incorrect. As Disbursing Agent and holder of the escrow account, Ms. P. Dzikowski has a duty to oversee the proper disbursement of the escrowed funds because she has been charged with distributing the funds in accordance with the provisions of the Confirmed Plan. The Pro–Rata Order further charged the Disbursing Agent to distribute any funds returned by the IRS to Tim Givens and other creditors in accordance with the confirmed plan. (See CP 264 at 2). Thus, as Disbursing Agent, she has a duty to seek return of these funds and oversee their proper distribution. This duty is sufficient to grant Ms. P. Dzikowski standing to seek return of improperly disbursed funds. First, the Disbursing Agent has suffered a pecuniary injury because her duty to oversee the proper distribution of funds has been affected in that the improper distribution to the IRS has diminished the funds available to satisfy other allowed claims. Without a return of the funds, Ms. P. Dzikowski cannot fulfill her duties. Second, this injury is directly traceable to the improper distribution of funds to the IRS. Finally, if the IRS is compelled to return the funds, Ms. P. Dzikowski's injury will be redressed. For these reasons, I conclude that, as a matter of law, Ms. P. Dzikowski, as Disbursing Agent, has established the re-

quirements of both constitutional and prudential standing to bring the Motion to Compel and the instant appeal.

### 2. Administrative Creditor's Standing

 As a holder of an allowed administrative claim, Dzikowski & Walsh, has standing to bring the motion to compel. The improper distribution of funds to the IRS has directly caused a pecuniary injury on it. Only if the funds are returned will the Second Escrow Account contain sufficient funds to satisfy the Tim Givens' claim and distribute the remaining funds to Dzikowski & Walsh. Furthermore, as a creditor, Dzikowski & Walsh has standing to bring a motion to compel an improper disbursement of funds. *Cf. In re Shelby Motel Group, Inc.*, 123 B.R. at 102 (stating that a single creditor may be permitted to bring a claim to set aside a fraudulent transfer). Therefore, the constitutional and prudential standing requirements have been met.

### 3. Ms. Cummings' Standing

 Under the Bankruptcy Code, a debtor-in-possession "shall have all the rights ... and powers, and shall perform all the functions and duties ... of a trustee ...". 11 U.S.C. § 1107. Thus, a debtor-in-possession assumes "the responsibilities of a trustee over its estate toward its creditors and, consequently, also assume[s] the corresponding fiduciary obligations." *Clough Mktg. Servs. v. Main Line Corp.*, No. 07–CV–017, 2007 WL 1430404, *8, 2007 U.S. Dist. LEXIS 34425, *23–24 (N.D.Ga. May 10, 2007) (citing *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 358, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985)). During the pendency of a bankruptcy case, "a debtor-in-possession has the duty to protect and conserve the property in his possession for the benefit of creditors." *Official Comm. of Unsecured Creditors of Toy King Distribs. v. Liberty Sav. Bank, FSB (In re Toy King Distribs.)*, 256 B.R. 1, 171 (Bankr. M.D.Fla.2000). If "a debtor-in-possession breaches its duty by failing to bring a claim to set aside a fraudulent transfer, then the court may permit a single creditor to bring the act in the debtor-in-possession's name." *See In re Shelby Motel Group, Inc.*, 123 B.R. 98, 102 (N.D.Ala. 1990).

Appellants are also correct that at the very least, Ms. Cummings, as Debtor and Debtor–in–Possession, has standing to bring the motion and the appeal. Specifically, Appellants argue that Ms. Cummings has a fiduciary duty to carry out the requirements of the Confirmed Plan. The IRS contends that Ms. Cummings has not been injured by the IRS's refusal to refund the improperly disbursed funds since the money would be used to satisfy other claims and will not be given to Ms. Cummings. Further, the IRS contends that Ms. Cummings has failed to establish redressability because if the funds were disgorged from the United States, they would still be subject to the Government's federal tax lien. These arguments are incredulous.

 Under the Confirmed Plan, Ms. Cummings retained causes of action to recover damages and equitable relief against creditors and non-creditor entities. (CP 204 § 11.1). Section 13.2 of the Confirmed Plan further provides that "[s]ubsequent to the Confirmation Date, the Debtor is authorized and directed to cause to be taken any action necessary or appropriate to carry out the provisions of this Plan." (*Id.* § 13.2). In addition, the Confirmed Plan names Ms. Cummings as Debtor–in–Possession. (*Id.* § 1.25). As such, Ms. Cummings has a fiduciary duty to all creditors to oversee the proper distribution of funds.

Ms. Cummings has already satisfied her 1994 tax liability—allowing the IRS to keep the disbursed funds presents a pecuniary injury to Ms. Cummings, both personally and as a fiduciary to her creditors. Ms. Cummings' injury is directly caused by the improper disbursement and can be redressed through a refund of the improperly disbursed funds. The fact that the funds will not flow to Ms. Cummings personally is irrelevant—she has a fiduciary duty to creditors and an interest in seeing that her Confirmed Plan is properly carried out and that final resolution of all outstanding claims are reached. In fact, § 13.2 of the Confirmed Plan states that Ms. Cummings is "authorized **and directed** to cause to be taken any action necessary or appropriate to carry out the provisions of this Plan." (CP 204 § 13.2) (emphasis added). Moreover, the bankruptcy court invalidation of the IRS's lien on the proceeds from the Jungle Road Property makes the IRS's statement that if the funds were disgorged from the United States they would still be subject to the Government's federal tax lien factually incorrect. Finally, as Debtor–in–Possession, Ms. Cummings has a duty to bring a motion to set aside a fraudulent transfer of funds. *Cf. In re Shelby Motel Group, Inc.*, 123 B.R. at 102 (noting that one duty of a bankruptcy trustee is to attempt to set aside a fraudulent transfer).

For the reasons discussed above, I agree with Appellants that the Disbursing Agent, who has a duty to collect the improperly disbursed funds from the IRS and distribute them in accordance with the Confirmed Plan; that administrative creditor, Dzikowski & Walsh, as a holder of an allowed claim which stands to receive a distribution once the IRS returns the funds and Class III creditor Tim Givens' claim is satisfied; and, that Debtor and Debtor–in–Possession, as a fiduciary of creditors in charge of overseeing that the Confirmed Plan provisions are complied with, all have standing to bring the Motion to Compel and the instant appeal.

### D. *Res Judicata*

 The second basis for denying the Motion to Compel was the application of *res judicata.* In explaining its decision during the March 22, 2007 hearing, the bankruptcy judge stated:

> Pursuant to my September 27th, 2005 Order Granting Plaintiff's Motion for Summary Judgment in part, and denying it in part, and granting Defendant's Motion for Summary Judgment in part, I specifically ruled that the Court would not review ... the issue of innocent spouse relief.
>
> . . .
>
> Judge Cook[e] noted that I determined that Ms. Cummings had no further obligation beyond any remaining escrowed funds in the Internal—in the Escrow Account One for the 1994 tax liability.

(March 22, 2007 Hearing Transcript at 54).

Judge Friedman's explanation, during the hearing on the motion, does not clearly explain how *res judicata* bars the Motion to Compel and the Order denying the motion simply states that the "Motion is DENIED for the reasons set forth on the record." (C.P. 374). What is clear, however, is that Bankruptcy Judge Friedman does not understand the doctrine of *res judicata.*

 For *res judicata* to apply, the following four factors must be established: (1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of

action. *EEOC v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1285–1286 (11th Cir.2004). As an appellate court, I review the bankruptcy court's determination of *res judicata* de novo. *See id.* The Motion to Compel requested that the IRS return the improperly disbursed funds—it did not request that the bankruptcy court review the IRS's determination related to Ms. Cummings's innocent spouse relief request. Thus, Appellants are correct that the proper application of *res judicata* establishes that the claim by the IRS was invalid so that the improperly disbursed funds must be returned.

Appellants and Appellee agree that the doctrine of *res judicata* applies to the bankruptcy court's order granting in part Ms. Cummings motion for summary judgement because: (1) the bankruptcy court was of competent jurisdiction; (2) the IRS and Ms. Cummings were involved in both cases; and, (3) the bankruptcy court decided the issue of whether the IRS's claim against Ms. Cummings arising from a 1994 tax liability was valid. Specifically, in the Summary Judgment Order, the bankruptcy court held that "Plaintiff Susan Cummings has no further obligation beyond any remaining escrowed funds in the Escrow Account One as to any indebtedness arising from the 1994 tax year." (Adv. 70 at 54). The bankruptcy court correctly found that as of the time of the completion of the real estate sales, the proceeds generated were sufficient to satisfy the 1994 tax obligation in its entirety, including interests and penalties. (*Id.* at 50). The bankruptcy court also found that in seeking the distribution from the First Escrow Account, Mr. Cummings in effect received a loan from the IRS. (*Id.*). "**Therefore, It is Lawrence Cummings from whom the IRS should be seeking repayment.**" (*Id.*). The bankruptcy court subsequently reduced its ruling that the IRS's claim against Debtor was disallowed to a Final Judgment. (Adv. 72).

The proper application of the *res judicata* doctrine precludes the IRS from arguing that Ms. Cummings owed any money, other than the amounts disbursed from the First Escrow Account, for the 1994 tax year. Because the IRS's claim against Ms. Cummings has been held to be invalid, any monies received by the IRS to satisfy a non-existent debt were improperly disbursed and must be refunded, with interests, immediately. The fact that the bankruptcy court may not revisit the question as to whether it has jurisdiction to review the IRS's denial of Ms. Cummings' innocent spouse request under 26 U.S.C. § 6015(f) is irrelevant. Once Ms. Cummings was successful in her claim to invalidate the IRS's claim, the theory under which she was successful does not matter. Therefore, *res judicata* precludes the IRS from arguing that it should not return the improperly disbursed funds.

E. Effect of Dismissing an Appeal as Moot

▬▬▬ An appellate court loses jurisdiction when a case becomes moot on appeal. *In re Smith*, 964 F.2d 636, 637–638 (7th Cir.1992). Despite the lack of jurisdiction, to protect the appellant against a preclusive effect, the trial court orders are dismissed with the appeal. *Id.* (citing *United States v. Munsingwear*, 340 U.S. 36, 39, 71 S.Ct. 104, 95 L.Ed. 36 (1950)). Thus, the established practice is that a federal appellate court faced with an appeal that has become moot, will reverse or vacate the judgment below. *Munsingwear*, 340 U.S. at 39, 71 S.Ct. 104.

In a desperate attempt to prevent the application of this well established principle, the IRS argues that Judge Cooke's order has no bearing upon the issues presented in the Motion to Compel and this

Appeal. To support this meritless argument, the IRS states that nothing in the order obligated the IRS to return the funds. The IRS conveniently omits the portion of the order that renders the bankruptcy court's Pro–Rata Order moot.

 In this case, Judge Cooke determined that the appeal of the Pro–Rata Order was moot because Ms. Cummings was successful in invalidating the claim of the IRS through her adversary proceeding. The order dismissing the appeal further provided that: "Consequently, the bankruptcy court's decision renders the present appeal moot because since Appellant was found not to be liable for the outstanding 1994 tax obligation **the [bankruptcy court's] Pro–Rata order directing distribution of funds to pay off that obligation is moot.**" (Appeal 20 at 7 November 14, 2007) (emphasis added). Judge Cooke's ruling that the bankruptcy court's Pro–Rata order was moot has the same effect as a vacatur in order to avoid preclusive effect of an unappealable order. *Cf. Federal Sav. & Loan Ins. Corp. v. Hykel,* 468 F.2d 1386, 1388 (3d Cir.1972) ("In such a case, [when the appeal becomes moot] the duty of the appellate court is to dismiss the appeal as moot and to remand to the district court with a direction that the judgment of that court be vacated as moot."). Since Judge Cooke mooted the Pro–Rata order, a remand for the bankruptcy court to do so was unnecessary. The effect of mooting the bankruptcy court's order is the same regardless of whether the appellate or the bankruptcy court entered the order; when an order is held to be moot, it has no effect. I find that, because the Pro–Rata Order has been vacated as moot by the appellate court, the IRS must restore the *status quo* by returning the improperly disbursed funds.

**F. Whether the Motion to Compel Should Have been Brought as a Separate Adversary Proceeding**

The IRS further argues that the appeal must be dismissed because, pursuant to Fed. R. Bankr.P. 7001(1)(2), an action to recover property or to determine the validity, extent or priority of a lien must be brought in the form of an adversary proceeding. This argument is nothing more than another desperate attempt by the IRS to avoid fulfilling its obligation to return the improperly disbursed funds. As Appellants point out, this argument is without merit because it overlooks the fact that an adversary proceeding was brought to determine the validity of the IRS's lien and that Ms. Cummings was successful in obtaining a judgement that the lien was invalid. As already discussed, *res judicata* thus precludes the IRS from arguing that its claim is valid.

**G. Duty of Candor and Sanctions**

 Federal Rule of Bankruptcy Procedure 9011 is the equivalent of Federal Rule of Civil Procedure 11. Therefore, case law interpreting Rule 11 may be use to interpret Bankruptcy Rule 9011. *See, e.g., Glatter v. Mroz (In re Mroz),* 65 F.3d 1567, 1572 (11th Cir.1995) ("Bankruptcy Rule 9011 is substantially identical to Federal Rule of Civil Procedure 11. Like Rule 11, Bankruptcy Rule 9011 ties sanctions to an attorney's signature on a particular pleading or document which is filed with the court. Thus, authorities applying these standards under Rule 11 … may be useful in applying Bankruptcy Rule 9011").

 A district court, acting as an appellate court in a bankruptcy proceeding, may impose Bankruptcy Rule 9011 sanctions against the parties and attorneys. *See In re Roete,* 936 F.2d 963, 967 (7th Cir.1991) ("From the plain language of the 1987 amendment, it is clear that

Rule 9011 applies to the district court. This conclusion is consistent with those statutes that give the district court jurisdiction over bankruptcy cases, 28 U.S.C. § 1334, and that define bankruptcy judges as a unit of the District Court."). Moreover, Bankruptcy Rule 9011 sanctions may be imposed against the IRS and its attorneys. *See, e.g., Hamilton v. United States ex rel. IRS (In re Hamilton)*, No. 89-128, 1990 U.S. Dist. LEXIS 11664 (M.D.Ga. Aug. 17, 1990) (imposing sanctions against the IRS).

A district court, on its own initiative, may impose Bankruptcy Rule 9011 sanctions by entering an order describing the conduct that violates the rule and by directing the attorney or party to show cause why it has not violated the rule. *See* Fed. R. Bankr.P. 9011. Under the Rule, the court must afford the parties notice and a reasonable opportunity to respond. *Id.*

 Lawyers, as officers of the court, have a duty of candor to the tribunal. *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 808-09 (11th Cir.2003) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994)). The Florida Rules of Regulating the Florida Bar also impose upon counsel a duty of candor to the court. *See* S.D. Fla. L.R. 11.1(B) (adopting the current Rules of Regulating the Florida Bar). In addition, Rule 11 "reinforces counsel's duty of candor to the Court by subjecting litigants to potential sanctions for making a representations to the court for an improper purpose." *Footman v. Wang Tat Cheung*, 341 F.Supp.2d 1218, 1225 (M.D.Fla.2004); *see also Glatter*, 65 F.3d at 1572 (holding that case law interpreting Rule 11 may be use to interpret Rule 9011).

 The duty owed by attorneys is that of "complete candor and primary loyalty to the court before which they prac-

tice. An attorney's duty to a client can never outweigh his or her responsibility to see that our system of justice functions smoothly." *Footman*, 341 F.Supp.2d at 1225. Therefore, a lawyer should not "knowingly misstate, distort, or improperly exaggerate any fact or opinion and should not improperly permit the lawyer's silence or inaction to mislead anyone." *Id.*

Mr. Lortie breached his duty of candor to the tribunal by misleading the bankruptcy court into believing that a premature disbursement of funds to the IRS would cause no prejudice to Ms. Cummings because if Ms. Cummings was successful in her adversary proceeding, all monies would be returned with interest. The record is clear that Mr. Lortie represented, numerous times, that the IRS would return the funds if Ms. Cummings won the adversary proceeding. Mr. Lortie never informed the bankruptcy court that the IRS only intended to return the money if Ms. Cummings won the adversary under § 6015 of the IRS Code. In the many misrepresentations as to the IRS's intent to refund improperly disbursed funds, outlined in section III-A of this Order, Mr. Lortie never mentioned that Ms. Cummings needed to be successful in her claim under § 6015 in order to obtain a refund.

Mr. Lortie further breached his duty of candor by inserting language in the draft of the Pro-Rata Order which narrowed the effect of the bankruptcy court's ruling. The record is clear that Bankruptcy Judge Friedman instructed Mr. Lortie to provide language in the Pro-Rata Order requiring the IRS to return disbursed funds if Ms. Cummings successfully invalidated the IRS claim. Rather than doing so, Mr. Lortie submitted a proposed order narrowing the language to require the IRS to return improperly disbursed funds only if Ms. Cummings was successful in her adversary under a specific theory of relief—a

theory the IRS must have known was impossible for Ms. Cummings to win since the IRS Code precludes judicial review of the IRS's determinations as to whether a tax payer is entitled to relief under § 6015. Finally, Mr. Lortie breached his duty of candor by misrepresenting to Judge Cooke that the disbursed funds would be refunded if Ms. Cummings won the adversary proceeding.

Mr. Dale, the attorney for the IRS in the proceedings related to the Motion to Compel, and Mr. Lortie also breached their duty by submitting briefs in this appeal arguing that the IRS was not obligated to return the funds despite their numerous promises that it would. During oral argument, Mr. Dale admitted to having read Mr. Lortie's numerous promises that the funds would be returned if Ms. Cummings was successful in her adversary proceeding. Mr. Dale stated that he didn't "think anyone could ignore" those comments. However, when asked why he was not therefore judicially estopped from arguing that reimbursement should not be compelled, rather than answering my question, he simply stated that: "the position of my office [the IRS] was that the Pro–Rata Order said exactly what it meant and it gave the circumstance to return the funds to the extent she was entitled to relieve under § 6015." Mr. Dale went on to say that the IRS's reading of the bankruptcy court's order on summary judgement was that the court had balanced the equities and that Ms. Cummings had "won part and lost part. We [the IRS] won part and she lost part" and "[b]ased upon the clear language of the Pro–Rata Order . . . there was no further entitlement by Ms. Cummings to any distribution of funds."

In stating his distorted reading of the summary judgment order, Mr. Dale omitted several key facts. First, although given a chance to do so, Mr. Dale did not address my question as to why the IRS was not judicially estopped from taking the current position in light of the many promises Mr. Lortie made—promises to return the funds if Ms. Cummings was successful and which Mr. Dale admitted were promises he was aware of and could not be ignored. Second, Mr. Dale never discussed the fact that the language in the order which the IRS contends absolves it from its promises to return the improperly disbursed funds was inserted by the IRS despite the bankruptcy judge's instructions to provide language that the IRS would return the funds if Ms. Cummings prevailed in the adversary proceeding. The bankruptcy judge never mentioned § 6015 in his instructions and Mr. Lortie never mentioned § 6015 when he promised the IRS would return the funds. Finally, Mr. Dale did not inform the Court that during the March 22, 2007 hearing on the Motion to Compel, Mr. Dale made the same "balance of the equities" argument to the bankruptcy court and that Bankruptcy Judge Friedman rejected that interpretation of his order on summary judgment.

During the March 22, 2007 hearing, Mr. Dale argued:

In entering the summary judgment order it appears that the Court attempted to balance the equities between the United States and Ms. Cummings.

. . .

[T]he result of the summary judgment was to discharge the *in personam* tax liability of Ms. Cummings for the 1994 tax year.

. . .

The court, it would seem, would be plainly aware of every order that had been entered in this docket . . . [including] the $203,000 that was distributed to the United States.

. . .

If the Court had granted Ms. Cummings' summary judgment outright, it would have found that she had no responsibility for the 1994 tax year.... But likewise, if the court had granted the United States summary judgment outright, Ms. Cummings would have had a serious deficiency for the 1994 tax year, approximately $57,000, even in spite of the disbursed funds....

...

[I]t was your Honor's ruling based upon your understanding of the seven years history of this case ... and an effort to bring finality between Ms. Cummings and the United States.

(March 22, 2007 Hearing Transcript at 26–27). The bankruptcy judge rejected Mr. Dale's argument and stated: "My point, Mr. Dale, with all due respect, is that I could interpret your argument as saying that I had decided in making my ruling that I was going to compromise the interest of both sides and in effect force a settlement between both sides. That was not my ruling." (*Id.* at 29). Mr. Dale nonetheless continued to argue that the "summary judgment order and final judgment amounted to a balancing of the equities between the two parties." (*Id.* at 31). The bankruptcy court responded: "Based on your interpretation. That is your interpretation." (*Id.*).

Although unsuccessful in front of the judge who entered the order, Mr. Dale now attempts to present the same distorted interpretation of the bankruptcy court's order to this Court. This argument has already been rejected by the judge who entered that order.[7] I find Mr. Dale's

attempt to knowingly misstate the meaning of the summary judgement order despite Bankruptcy Judge Friedman's rejection of such interpretation to amount to a breach of his duty of candor to this tribunal. *Cf. Footman,* 341 F.Supp.2d at 1225 (stating that a lawyer should not "knowingly misstate, distort, or improperly exaggerate any fact or opinion and should not improperly permit the lawyer's silence or inaction to mislead anyone."). Furthermore, Mr. Dale breached his duty being fully aware that I had found Mr. Lortie and the IRS's conduct in the adversary and the main bankruptcy case unethical and aware that I was contemplating the imposition of sanctions against Mr. Lortie and the IRS. Despite his knowledge, Mr. Dale chose to withhold important information and to breach his duty of candor.

 There is sufficient evidence on the record to impose sanctions against the IRS, Mr. Lortie, and Mr. Dale, whose signatures appear on the pleadings submitted to this Court. However, Bankruptcy Rule 9011 requires a court to direct the attorneys and parties to show cause why sanctions should not be imposed prior to their imposition. *See* Rule 9011. Therefore, I am ordering the IRS, Mr. Lortie and Mr. Dale to show cause why sanctions, including an award of appellate attorneys' fees, should not be imposed in this case.

## IV. CONCLUSION

A careful review of the record reveals that this case represents a compounding of judicial errors; the rulings of Bankruptcy Judge Friedman are simply inexplicably

---

7. In its Brief, the IRS argues that deference should be given to the bankruptcy court's interpretation of its own orders. I agree. However, Appellee's application of this established rule is incorrect. I find that Deference must be given to the bankruptcy court's rejection of the *"balance of the equities"*. However, because the bankruptcy judge denied the Motion to Compel on standing and *res judicata,* the denial does not interpret the meaning of its previous Pro–Rata Order or Summary Judgement Order. Since there is no interpretation, no deference is required.

and inherently inconsistent. In addition, while Judge Cooke did not take the matter further by explicitly stating that the disbursed funds should be returned, Bankruptcy Judge Friedman should have found it to be a necessary implication of Judge Cooke's Order dismissing the Appeal of the Pro–Rata Order. Nonetheless, Bankruptcy Judge Friedman failed to do so when he considered the instant Motion to Compel. These judicial errors were further compounded by the IRS's unethical behavior in failing to return the improperly disbursed funds once the bankruptcy court held that Ms. Cummings had satisfied her tax liability upon the funding of the First Escrow Account and by choosing to ignore the necessary implication of Judge Cooke's Order in the briefing opposing the motion and the instant appeal. Finally, the errors were further compounded by the IRS attorneys' failure to deal honestly with this Court in both their pleadings and oral arguments.

Having considered the pleadings, pertinent parts of the record, the parties' arguments and relevant case law, I reverse the bankruptcy court's order and grant Appellants' Motion to Compel.

Accordingly, it is hereby ORDERED AND ADJUDGED:

1. The bankruptcy court's Order Denying the Motion to Compel is REVERSED.

2. Appellants' Motion to Compel is GRANTED.

3. The IRS is instructed to return the improperly disbursed funds, with interests, to the Disbursing Agent. The Disbursing Agent is instructed to distribute these funds in accordance with the Confirmed Plan.

4. Pursuant to Bankruptcy Rule 8014, Appellee will bear the costs of this appeal.[8]

5. This appeal is CLOSED. However, the Court RETAINS JURISDICTION on the matter of appellate attorney's fees, costs and sanctions.

6. Within 20 days from the date of this Order, Mr. Lortie, Mr. Dale, and the IRS are ordered to show cause why appellate attorneys' fees and sanctions should not be imposed against them in this case.

ORDERED IN CHAMBERS at Miami, Florida this *26* day of November 2007.

8. Specifically, Rule 8014 provides:

Except as otherwise provided by law, agreed to by the parties, or ordered by the district court or the bankruptcy appellate panel, **costs shall be taxed against the losing party on an appeal** .... Costs incurred in the production of copies of briefs, the appendices, and the record and in the preparation and transmission of the record, the cost of the reporter's transcript, if necessary for the determination of the appeal, the premiums paid for cost of supersedeas bonds or other bonds to preserve rights pending appeal and the fee for filing the notice of appeal shall be taxed by the clerk as costs of the appeal in favor of the party entitled to costs under this rule.

Fed. R. Bankr.P. 8014.